IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH HOLMES, *et al.*,

     Plaintiffs,          CASE NO. 2:20-cv-11390-GCS-RSW

v.                        Judge George C. Steeh

POLARIS INDUSTRIES INC.,     **ORAL ARGUMENT REQUESTED**

     Defendant.

---

Jeffrey T. Stewart (P24138)
David S. Shiener (P78608)
JOHNSON LAW, PLC
Attorneys for Plaintiffs
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324.8300 F: (313) 324-8301
jstewart@venjohnsonlaw.com
dshiener@venjohnsonlaw.com

Mark K. Norris (OH 0092222)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
200 Public Square, Suite 2300
Cleveland, Ohio 44114
P: (216) 363-4500 F: (216) 363-4588
mnorris@beneschlaw.com

Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
71 S. Wacker Drive, Suite 1600
Chicago, IL  60606
P: (312) 212-4968 F: (312) 767-9192
dbeery@beneschlaw.com

---

## DEFENDANT POLARIS INDUSTRIES INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Polaris Industries Inc. ("Polaris") respectfully moves for partial

summary judgment (the "Motion") on Plaintiffs' Complaint, pursuant to Fed. R. Civ.

P. 56, as no genuine issues of material fact exist as to the application of damages caps on Plaintiffs' claims under Michigan's Product Liability Statute, MCL § 600.2945–2949a.  In support of the Motion, Polaris relies on the facts and law set out in its brief.

In accordance with Local Rule 7.1(a), counsel for Polaris certifies that on November 5, 2021, they conferred with Plaintiffs' counsel on the nature of this Motion but the parties were unable to reach a concurrence in the relief sought.

For these reasons, Polaris respectfully requests that the Court enter an Order holding that all of Plaintiffs' claims are subject to the caps under MCL § 600.2946a.

Dated: November 5, 2021

Respectfully submitted,

s/ *Mark K. Norris*

Mark K. Norris (OH 0092222)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  (216) 363-4500
Facsimile:  (216) 363-4588
Email:  mnorris@beneschlaw.com

Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
E-mail:  dbeery@beneschlaw.com

*Attorneys for Defendant Polaris Industries Inc.*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH HOLMES, *et al.*,

      Plaintiffs,

v.

POLARIS INDUSTRIES INC.,

      Defendant.

CASE NO. 2:20-cv-11390-GCS-RSW

Judge George C. Steeh

**ORAL ARGUMENT REQUESTED**

---

Jeffrey T. Stewart (P24138)
David S. Shiener (P78608)
JOHNSON LAW, PLC
Attorneys for Plaintiffs
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324.8300 F: (313) 324-8301
jstewart@venjohnsonlaw.com
dshiener@venjohnsonlaw.com

Mark K. Norris (OH 0092222)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
200 Public Square, Suite 2300
Cleveland, Ohio 44114
P: (216) 363-4500 F: (216) 363-4588
mnorris@beneschlaw.com

Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
71 S. Wacker Drive, Suite 1600
Chicago, IL  60606
P: (312) 212-4968 F: (312) 767-9192
dbeery@beneschlaw.com

---

## <u>DEFENDANT POLARIS INDUSTRIES INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................ v

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 3

SUMMARY JUDGMENT STANDARD .................................................. 5

ARGUMENT ....................................................................................... 7

I.  Michigan Law Caps Noneconomic Damages in Products
    Liability Actions. ........................................................................ 8

II.  Plaintiffs' Products Liability Claims Are Subject To This Cap. ..................... 9

    A.  Plaintiffs' Manufacturing Defect Claim Is Subject To
        The Cap. ............................................................................... 9

    B.  The MPLS's Exception To The Cap For "Actual
        Knowledge" Does Not Apply Here. ......................................... 11

III.  Plaintiffs' Derivative Claim Is Also Subject to Michigan's
    Noneconomic Damages Cap. ..................................................... 11

    A.  The Derivative Claim Alleges A Failure To Discover The
        Manufacturing Defects Through Routine Maintenance. ..................... 12

    B.  Regardless Of Labels, The Court Must Examine The
        Essence Of Plaintiffs' Claims To Determine Whether
        The Damages Cap Applies. ..................................................... 14

CONCLUSION .................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*,
    323 F.3d 386 (6th Cir. 2003) ................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................6

*Cox v. Kentucky Dept. of Transp.*,
    53 F.3d 146 (6th Cir. 1995) ..................................................................6

*First Nat'l Bank v. Cities Serv. Co.*,
    391 U.S. 253 (1968)..............................................................................7

*Heaton v. Benton Const. Co.*,
    286 Mich.App. 528, 780 N.W.2d 618 (2009).....................................15

*Hendrian v. Safety-Kleen Sys., Inc.*,
    No. 08-14371, 2012 WL 3758229 (E.D. Mich. Aug. 30, 2012) ........14

*Holbrook v. Prodomax Automation Ltd.*,
    No. 1:17-CV-219, 2021 WL 4260622 (W.D. Mich. Sept. 20, 2021)............6, 15

*Jahnke v. Allen*,
    308 Mich.App. 472 (2014) ....................................................2, 12, 14

*McLean v. 988011 Ontario, Ltd.*,
    224 F.3d 797 (6th Cir. 2000) ................................................................7

*Redding v. St. Eward*,
    241 F.3d 530 (6th Cir. 2001) ................................................................6

*Teal v. Argon Med. Devices, Inc.*,
    No. 20-CV-11018, 2021 WL 1378783 (E.D. Mich. Apr. 12, 2021) .................14

*Tolan v.* Cotton, 572 U.S. 650 (2014).......................................................6

*Trees v. Pfizer, Inc.*,
    No. 338297, 2018 WL 6710594 (Mich. Ct. App. Dec. 20, 2018)......................14

*Waldron v. Brit. Petroleum Co.*,
    38 F.R.D. 170 (S.D.N.Y. 1965) ...........................................................................7

**Statutes**

MCL § 600.1483 ...........................................................................................................8

MCL § 600.2945 ...........................................................................................................1

MCL § 600.2945(h) ................................................................................................9, 14

MCL § 600.2946 ...........................................................................................................1

MCL § 600.2946a .............................................................................................3, 8, 9, 16

MCL § 600.2946a.(3)..................................................................................................11

MCL § 600.2948 ...........................................................................................................1

MCL § 600.2949a ........................................................................................................11

MPLS ............................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 56 .........................................................................................................1

Fed. R. Civ. P. 56(c)................................................................................................5, 6

## ISSUE PRESENTED

1.     Are Plaintiffs' claims subject to the cap on noneconomic damages under Michigan's Product Liability Statute, MCL § 600.2945–2949a.

*Polaris's Answer: Yes.*

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

<u>Cases</u>

1. *Heaton v. Benton Const. Co.*, 286 Mich.App. 528, 780 N.W.2d 618 (2009)

2. *Hendrian v. Safety-Kleen Sys., Inc.*, No. 08-14371, 2012 WL 3758229 (E.D. Mich. Aug. 30, 2012)

3. *Holbrook v. Prodomax Automation Ltd.*, No. 1:17-CV-219, 2021 WL 4260622 (W.D. Mich. Sept. 20, 2021)

4. *Jahnke v. Allen*, 308 Mich.App. 472 (2014)

5. *Teal v. Argon Med. Devices, Inc.,* No. 20-CV-11018, 2021 WL 1378783 (E.D. Mich. Apr. 12, 2021

<u>Statutes</u>

1. MCL § 600.2946a

2. MCL § 600.2949a

<u>Rules</u>

1. Fed. R. Civ. P. 56

Defendant Polaris Industries Inc. ("Polaris"), pursuant to Federal Rule of Civil Procedure 56, submits this brief in support of its Motion for Partial Summary Judgment.

## **INTRODUCTION**

On February 9, 2019, Plaintiff Deborah Holmes was injured when riding on a 2018 Polaris Switchback 600 Pro S (the "snowmobile") in Munising, Michigan.  In this lawsuit, she alleges that the snowmobile's throttle stuck during her ride, ultimately causing her to lose control and hit a tree.  Plaintiffs have brought two principal claims: (1) a straightforward products liability claim alleging a manufacturing defect in the snowmobile's throttle shut-off system (the "Products Liability Claim"); and (2) a negligence claim, alleging that Polaris failed to identify the manufacturing defect during routine vehicle maintenance, which is wholly derivative of and dependent on the Products Liability Claim (the "Derivative Claim").

Polaris seeks partial summary judgment on a narrow issue:  whether Plaintiffs' claims are subject to the noneconomic damages caps under Michigan's Product Liability Statute, MCL §§ 600.2945–2949a (the "MPLS").

There can be no question that the Products Liability Claim is subject to the MPLS's damages cap.  Michigan law is also clear that the MPLS damages caps also apply to Plaintiffs' Derivative Claim.  Michigan law requires a court to evaluate the

essence of a claim in determining the true cause of action, and thus whether the damages cap applies. *See Jahnke v. Allen*, 308 Mich.App. 472, 475 (2014). The essence of Plaintiffs' claim is that she was injured as a result of an allegedly defective throttle shut-off system. Because Polaris was both the manufacturer and the owner of the snowmobile, Plaintiffs are attempting to evade the MPLS's noneconomic damages cap by appending a theory that Polaris was negligent for allegedly failing to perform maintenance that ***might*** have, at most, identified the alleged defect. Crucially, Plaintiffs have not claimed that the alleged negligent maintenance caused the snowmobile's throttle shut-off system to fail. Instead, Plaintiffs merely assert that Polaris could have learned about the alleged manufacturing defect during the routine maintenance. Allowing Plaintiffs to evade the cap by relabeling their Products Liability Claim in this way would undermine both the MPLS and Michigan's strong public policy in favor of capping damages in cases where injuries were caused by an allegedly defective product.

To decide this motion for partial summary judgment, the Court does not need to wade into the many eyewitness accounts of Plaintiff's accident or weigh in on the parties' disputed theories of what happened. Instead, the motion asks the Court to rule on a narrow legal issue involving no disputed facts. Indeed, the only "facts" that Polaris presents in support of this motion are Plaintiffs' own allegations and testimony from Plaintiffs' own expert. Early resolution of this partial summary

judgment motion will significantly benefit the parties' preparation for trial by determining the scope of potential damages at trial.

For the reasons set forth in greater detail below, Polaris asks the Court to grant its Motion for Partial Summary Judgment and find that all of Plaintiffs' claims are subject to the noneconomic damages caps under Section 600.2946a of the MPLS.

## <u>BACKGROUND</u>

This is a snowmobile product liability case.  Plaintiff Deborah Holmes was riding in a group with five others on a groomed trail near Munising, Michigan on February 9, 2019.  (Compl. ¶¶ 5-6, 9, ECF No. 1, PageID.2, 3.)  Plaintiff was operating a 2018 Polaris Switchback 600 Pro S, which a family friend and member of the riding party had borrowed from Polaris as part of Polaris's Employee Check-out Program.  (*Id.* at ¶¶ 5, 25, ECF No. 1, PageID.2, 5; Deb. Holmes Depo. 9:10-18, 39:1-16, **Exhibit A**.)  After four riders safely crossed a highway, it was Plaintiff's turn to cross.  (Deb. Holmes Depo. 57:24-58:15.)  Plaintiff crossed the road and applied the throttle to speed up to get over the berm on the far side of the highway. (*Id.* at 69:6-9.)  Plaintiff then contends that the snowmobile's throttle stuck, causing Plaintiff to accelerate and lose control of the snowmobile and hit a group of trees, resulting in injuries to her legs and pelvis.  (Compl. ¶¶ 12, 16-17, ECF No. 1, PageID.3-4; Deb. Holmes Depo. 121:6-14.)

Plaintiffs assert that the accident was caused by this alleged stuck-throttle event. (Deb. Holmes Depo. 78:23-25; Kinder Depo. 110:23-111:1, **Exhibit B**.) Specifically, Plaintiffs allege that the snowmobile's throttle release switch[1] (TRS) would have shut the engine down in response to the stuck throttle—thus avoiding the accident—but for a manufacturing defect in the TRS. (Kinder Depo. 169:13-17.)

A stuck throttle event is a situation where the throttle lever is released by the rider, but the throttle cable or plates do not return to the normal closed position. (*Id.* at 26:10-19.) This allows the snowmobile's engine to maintain its speed according to the last throttle position even without additional rider input. Because of the possibility of stuck throttle events in some weather and riding conditions (*i.e.*, heavy precipitation or very deep snow),[2] the snowmobile is equipped with a TRS. (*Id.* at 195:2-4.) The TRS is designed to detect a stuck throttle and respond by shutting down the snowmobile's engine. (*Id.* at 153:7-16.)

In addition to their Products Liability Claim, Plaintiffs assert a negligence theory against Polaris for an alleged failure to maintain the vehicle, the Derivative

---

[1] The "throttle release switch" is also referred to as the "throttle safety switch," or TSS. Mr. Kinder testified that the two terms are interchangeable. (Kinder Depo. 25:20-26:6.)

[2] None of these weather or riding conditions existed on the date of the accident. (Deb. Holmes Depo. 54:23-25, 110:11-15.)

Claim.[3]  Plaintiffs allege that Polaris, as the owner of the snowmobile, should have inspected the TRS at intervals recommended in the Owner's Manual.  (Kinder Depo. 130:12-25.)  At the time of the accident, the snowmobile had just over 2,100 miles. (*Id.* at 147:9-10.)  The snowmobile's Owner's Manual recommends inspecting the TRS at intervals of 150, 500, 1,000, and 2,000 miles.  (*Id.* at 144:21-145:4.)

Critically, though, Plaintiffs do not allege that a lack of maintenance—i.e., alleged negligence—caused the alleged stuck throttle or TRS failure.  In fact, Plaintiffs' expert admitted that a lack of maintenance did not cause the alleged stuck throttle or TRS failure.  (*Id.* at 131:1-132:9.)  Instead, Plaintiffs allege that, if the scheduled maintenance had been performed, Polaris might have detected the alleged pre-existing defect in the TRS.  (*Id.* at 132:2-14.)  In other words, this maintenance-related claim does not constitute a standalone negligence claim.  As discussed more thoroughly below, it amounts to a derivative claim, which rests entirely upon the Products Liability Claim that the subject snowmobile had a manufacturing defect.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[3] Polaris disputes that it failed to maintain the subject snowmobile, but for purposes of this Motion, the Court need not weigh in on that dispute. The nature of Plaintiffs' allegations—not whether they are factually correct—is an undisputed fact.

any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (quoting Fed.R.Civ.P. 56(c)).[4]  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Tolan v.* Cotton, 572 U.S. 650, 657 (2014).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter

---

[4] Motions for partial summary judgment seeking clarity on the proper application of damages caps under the MPLS are not disfavored and are subject to the same standard. *See Holbrook v. Prodomax Automation Ltd.*, No. 1:17-CV-219, 2021 WL 4260622, at *4 (W.D. Mich. Sept. 20, 2021) (rejecting plaintiff's attempt to avoid damages caps and instead granting defendants' motions for summary judgment).

of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (quoting *Waldron v. Brit. Petroleum Co.*, 38 F.R.D. 170, 172 (S.D.N.Y. 1965)). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence support the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## **ARGUMENT**

According to Plaintiffs' expert, two events must have occurred for this accident to unfold as Plaintiffs allege. (*See* Kinder Depo. 279:4-10.) First, the snowmobile's throttle system must have stuck open and caused the snowmobile to accelerate beyond Plaintiff's control. (*Id.*) Second, the snowmobile's TRS must have suffered a manufacturing defect that prevented it from shutting the engine down in response to the alleged stuck throttle. (*Id.*)

Critically, whether the snowmobile's throttle shut-down system actually contained a manufacturing defect is *not* at issue in this Motion, although Polaris contests this and will defend itself on this issue at trial. Rather, this Motion presents the narrow question of law of whether the MPLS and its cap on noneconomic

damages applies to Plaintiffs' Derivative Claim. Because the gravamen of the lawsuit is plainly centered on an alleged products liability defect and because Plaintiffs' Derivative Claim is propped up only by their Product Liability Claim, the MPLS's damages caps apply.

## I.    **Michigan Law Caps Noneconomic Damages in Products Liability Actions.**

Section 600.2946a(1) of the MPLS limits the amount a plaintiff may recover in a product liability action for noneconomic damages. In pertinent part, the statute states that "the total amount of damages for noneconomic loss shall not exceed $280,000, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function."[5] In cases where the defect is found to have caused death or the permanent loss of a vital bodily function, the amount is limited to $500,000. *Id.*

This statute, and its caps, broadly enact Michigan's strong public policy in favor of limiting noneconomic damages in product liability actions. Prior to the MPLS's enactment, product manufacturers, sellers, and the liability insurance industry campaigned for tort liability reforms that would reduce exposure to potentially unlimited tort liability, permit affordable liability insurance premiums,

---

[5] The statute further provides that these amounts shall be adjusted per MCL § 600.1483, at the "end of each calendar year to reflect the cumulative annual percentage change in the consumer price index."

and foster product development and innovation. *See* H.B. 344 (S-4), First Analysis, pp 1, 9-11 (**Exhibit C**); S.B. 344 & H.B. 4508, Revised Enrolled Analysis, pp 1-2, 10-17 (**Exhibit D**).    In direct response, the Michigan Legislature passed 1995 PA 249, effective March 28, 1996, which dramatically strengthened the protections afforded to product designers, engineers, manufacturers and sellers. Notably, the MPLS broadly and comprehensively defines a "product liability action" as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product."  MCL § 600.2945(h).

In short, the noneconomic damages cap under Section 600.2946a of the MPLS reflects a strong public policy determination by Michigan's legislature to limit damages where alleged product defects are at issue.

## II.    **Plaintiffs' Products Liability Claims Are Subject To This Cap.**

### A.    *Plaintiffs' Manufacturing Defect Claim Is Subject To The Cap.*

Plaintiffs allege two manufacturing defect theories.  First, from the inception of this litigation, Plaintiffs have maintained that "[t]he Snowmobile was defective when it left the manufacturer's control . . . because it had a tendency for the throttle to stick in the open position."  (Compl. at ¶ 23, ECF No. 1, PageID.4.)  Accordingly, Plaintiffs assert that Polaris breached its duty to "manufacture a reasonably safe snowmobile."  (*Id.* at ¶¶ 30–31, ECF No. 1, PageID.6.)

9

Plaintiffs' second alleged manufacturing defect is that the snowmobile's TRS was defective because it intermittently failed to completely shut the engine down when it detected a stuck throttle condition. (Kinder Depo. 279:19-280:1.) According to Mr. Kinder, the intermittent failure of the TRS to shut the engine down represents a product defect. (*Id.* at 133:10-13.) Critically, Mr. Kinder opined that the TRS was most likely defective at the time of manufacture:

```
2   Q.   So if we think of manufacturing as being the whole
3        process of not just the components, but putting it
4        together and getting it out the door, if we don't know
5        of an intervening event, what is the most likely
6        possibility for when a defective TRS system became
7        defective?
8   A.   You could -- you can argue that it's probable that it
9        would be at the beginning of its life.
10  Q.   You can argue it, or it is probable?  Which of the two?
11            MS. BEERY:  Objection.  Form and foundation.
12  A.   Well, it is probable considering you don't have
13        evidence that it happened at one particular time.
```

(*Id.* at 294:2-13.)

Both the stuck throttle and TRS allegations are straightforward products liability claims. Both allege the existence of a manufacturing defect that caused Plaintiffs' injuries and necessarily hinge on an alleged product defect. Thus, both

10

products liability theories are subject to the noneconomic damages cap under MCL § 600.2946a.

      B.   *The MPLS's Exception To The Cap For "Actual Knowledge" Does Not Apply Here.*

The MPLS contains a limited exception to the cap on noneconomic damages. The limitation on damages will not apply in cases "for death or permanent loss of a vital bodily function . . . [as a] result of the defendant's gross negligence," (MCL § 600.2946a.(3)) or if the defendant had "actual knowledge" at the time the product left the factory that it was defective, there was a substantial likelihood that the defect would cause the injury, and the defendant "willfully disregarded" that knowledge. MCL § 600.2949a.

There is no record evidence demonstrating that Polaris had actual knowledge of a defect in the subject snowmobile that would trigger the exception under Section 2949a to the noneconomic damages caps.  As a result, this limited exception is not applicable to Plaintiffs' claims.

**III.**   **Plaintiffs' Derivative Claim Is Also Subject to Michigan's Noneconomic Damages Cap.**

Plaintiffs' Derivative Claim alleges that Polaris, the owner of the snowmobile, was negligent for failing to maintain the TRS as called for in the vehicle's manual. (Compl. ¶¶ 34-35, ECF No. 1, PageID.6-7; Kinder Depo. 144:21-145:4.)  Plaintiffs assert that Polaris should have inspected the TRS at 150, 500, 1,000, and 2,00 mile

11

intervals, but did not.  (*Id.*)  Had Polaris done so, Plaintiffs contend, Polaris may have learned about the alleged manufacturing defect in either the throttle or the TRS. (*Id.* at 131:15-20.)  Polaris expects Plaintiffs to argue that this Derivative Claim is not a products liability theory and thus not subject to the noneconomic damages caps under MCL § 600.2946a.  But this claim is entirely derivative of Plaintiffs' products liability claim: *if there is no manufacturing defect, there can be no negligent failure to identify it*.  There's no causation, no injury, and therefore no "negligence" without the alleged product defect.  At most, according to Plaintiffs' theory, the inspection *might* have allowed Polaris to learn of the alleged manufacturing defect to the throttle shut-down system.  For this reason, Michigan law is clear that the damages cap applies to this claim as well, regardless of what Plaintiffs call it.  *See Jahnke v. Allen*, 308 Mich.App. 472, 475 (2014).

### A.   The Derivative Claim Alleges A Failure To Discover The Manufacturing Defects Through Routine Maintenance.

Plaintiffs do not allege that the lack of maintenance created the TRS defect that allegedly caused the accident.  (Kinder Depo. 131:1-11.)  This is not a scenario, for example, where the failure to maintain a vehicle's brake system led to longer stopping distances and caused a subsequent collision.  (*Id.* at 131:4-8.)  Mr. Kinder was clear that Polaris's alleged missed inspections *did not cause or create* the manufacturing defect:

```
 1    Q.   Would you agree with me that this alleged failure to
 2         maintain the vehicle didn't cause a stuck throttle?
 3    A.   I agree.
 4    Q.   It's not like a situation where you failed to maintain
 5         your brakes, and your brake fluid gets too much water
 6         in it, and the brake fluid boils, and it causes a brake
 7         failure?
 8    A.   I would agree.
 9    Q.   This is different, right?  This isn't that the lack of
10         maintenance caused the stuck throttle, agreed?
11    A.   Agreed.
```

(*Id.* at 131:1-11.)  Instead, Mr. Kinder contended that regular inspections might have uncovered the alleged defect.  (*Id.* at 131:15-20.)  Plaintiffs own allegations and expert's opinions are clear that, without the alleged defect, there would have been no accident.  (*Id.* at 132:2-9.)  Thus, at its core, Plaintiffs' negligence theory is a products liability claim—the theory is dependent on the existence of a manufacturing defect that caused the accident and Polaris's alleged lack of proper maintenance might have, at most, allowed Polaris to learn about the manufacturing defect prior to the accident.  Without the alleged manufacturing defect, Plaintiffs have no negligence claim at all. As a result, this claim remains subject to the MPLS's cap on noneconomic damages.

B.     *Regardless Of Labels, The Court Must Examine The Essence Of Plaintiffs' Claims To Determine Whether The Damages Cap Applies.*

In Michigan, courts determine the "gravamen of an action . . . by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Jahnke*, 308 Mich.App. at 475 (quoting *Adams v. Adams*, 276 Mich.App. 704, 710–711 (2007)). Taken as a whole, there is no doubt that Plaintiffs' case is a product liability action for purposes of Michigan law.

Since the statute's enactment, Michigan courts have consistently viewed the MPLS to cover a "very expansive umbrella of product liability actions." *Trees v. Pfizer, Inc.*, No. 338297, 2018 WL 6710594, at *3 (Mich. Ct. App. Dec. 20, 2018). Indeed, the MPLS defines a "[p]roduct liability action" as "an action based on a legal or equitable theory brought . . . for injury to a person . . . caused by or resulting from the production of a product."  MCL § 600.2945(h); *see also Teal v. Argon Med. Devices, Inc.*, No. 20-CV-11018, 2021 WL 1378783, at *3 (E.D. Mich. Apr. 12, 2021) ("In Michigan, 'negligence' and 'implied warranty' are two ***theories of recovery*** which are recognized in product liability cases.") (emphasis added).

Beyond just Michigan courts, "[c]ourts within the Sixth Circuit are obligated to examine the essence of a claim" as well. *Hendrian v. Safety-Kleen Sys., Inc.*, No. 08-14371, 2012 WL 3758229, at *6 (E.D. Mich. Aug. 30, 2012) (citing *Heaton v. Benton Const. Co.*, 286 Mich.App. 528, 780 N.W.2d 618, 623 (2009)).  Accordingly, federal district courts have regularly—and recently—found that "the MPLS

14

precludes other claims based on the same facts*.*" *See, e.g., Holbrook v. Prodomax Automation Ltd.*, No. 1:17-CV-219, 2021 WL 4260622, at *4 (W.D. Mich. Sept. 20, 2021). The *Holbrook* case was a negligence action that involved an assembly line consisting of six zones with robots in each zone. *Id.* The court found that a programmable logic controller, which failed to identify the presence of a maintenance worker in the area, was a "product" under the MPLS. In so finding, the *Holbrook* court cited to *Heaton*, in which the Michigan Court of Appeals "ruled that the plaintiff's claim, pled as one of negligence, fell within the MPLS's ambit." *Id.* (emphasis added).

In other words, Michigan law tasks courts with identifying the essence or gravamen of a claim in determining whether the noneconomic damages cap applies. Here, there is no doubt that Plaintiffs have pleaded a "product liability action" within the meaning of the MPLS: Ms. Holmes explicitly claims she was injured by the snowmobile's allegedly defective throttle and TRS. As such, her Derivative Claim remains squarely subject to the MPLS, including its cap on noneconomic damages.

A contrary finding would be counter to Michigan's strong public policy in favor of capping damages where claims involve allegedly defective products. Indeed, if every products liability claim could simply be recast as a negligence claim, Michigan's noneconomic damages cap would be rendered meaningless because every plaintiff could relabel claims to evade the cap. This would eviscerate the

Michigan Legislature's intent to reduce manufacturers' exposure to potentially unlimited tort liability, increase insurance premiums, and stifle product development and innovation.  That is not Michigan law.  As a result, the Court should find that Plaintiffs' derivative negligence claim is subject to the noneconomic damages caps under MCL § 600.2946a.

## <u>CONCLUSION</u>

Plaintiffs' Complaint alleges a straightforward product liability action.  For the foregoing reasons, Polaris respectfully requests the Court enter an Order holding that all of Plaintiffs' claims, regardless of labels, are subject to the caps under MCL § 2946a.