IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH HOLMES, *et al.*,

    Plaintiffs,

v.

POLARIS INDUSTRIES INC.,

    Defendant.

CASE NO. 2:20-cv-11390-GCS-RSW

Judge George C. Steeh

**ORAL ARGUMENT REQUESTED**

---

Jeffrey T. Stewart (P24138)
David S. Shiener (P78608)
JOHNSON LAW, PLC
Attorneys for Plaintiffs
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324.8300 F: (313) 324-8301
jstewart@venjohnsonlaw.com
dshiener@venjohnsonlaw.com

Mark K. Norris (OH 0092222)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
200 Public Square, Suite 2300
Cleveland, Ohio 44114
P: (216) 363-4500 F: (216) 363-4588
mnorris@beneschlaw.com

Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
P: (312) 212-4968 F: (312) 767-9192
dbeery@beneschlaw.com

---

**DEFENDANT POLARIS INDUSTRIES INC.'S REPLY BRIEF IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Polaris's Motion for Partial Summary Judgment presents one straightforward issue: Does the noneconomic damages cap in Michigan's Product Liability Statute, MCL §§ 600.2945-2949a (the "MPLS") apply to Plaintiffs' claims for products liability and negligent maintenance? Plaintiffs do not dispute that the cap applies to their products liability claims. The issue for the Court, then, is whether the cap applies to Plaintiffs' negligent maintenance claim. Plaintiffs acknowledge this is a purely legal issue. (Opp., Dkt. No. 26, at Fn. 1.)

Thus, to answer this question, the Court does not need to wade through the facts of the snowmobile crash or whether Polaris was negligent in maintaining the subject snowmobile.  Rather, the Court must determine whether, taken as a whole, the essence of Plaintiffs' action against Polaris is a products liability action. *See e.g.*, *Heaton v. Benton Constr. Co.*, 286 Mich. App. 528, 780 N.W.2d 618 (2009). Plaintiffs' Opposition admits repeatedly that their negligence claim is based on the same exact defect as their products liability claim. (Opp. at 7-8, 18, 19, 20-21.) Their products liability claims allege an unspecified defect with the subject vehicle's throttle. Their negligence claim asserts that, because Polaris allegedly failed to properly maintain the vehicle, it never discovered the alleged unspecified defect with the subject vehicle's throttle. Thus, both the products liability and negligence claims necessarily involve Plaintiffs' allegation that an alleged throttle defect caused the accident. Plaintiffs' negligent maintenance claim does not and cannot stand without

1

the same alleged defect that makes up their products liability claims. Since Plaintiffs' negligent maintenance claim cannot survive without the products liability element, it is subject to the MPLS and its caps. For these reasons, as set forth below, Polaris's Motion for Partial Summary Judgment should be granted.

## ARGUMENT

I.  **When Determining Whether the MPLS Caps Apply, The Court Must Look at the Essence of Plaintiffs' Entire Action—Not Just at Individual Claims.**

In their Opposition, Plaintiffs' primary argument is that their negligent maintenance claim is asserted under a separate legal theory from their products liability claims, including a separate duty (that of a vehicle owner versus a manufacturer). Plaintiffs rely heavily on a statement in Polaris's Answer about Polaris's duty as the owner of the snowmobile, (Opp. at 11), and contend that the existence of a negligent maintenance claim that includes a duty not expressly grounded in products liability brings that particular claim outside of the MPLS's damage cap. In other words, Plaintiffs would have the Court consider its product liability and negligent maintenance claims individually, rather than looking at the essence of all of the claims making up the action, to determine whether the MPLS applies.

In this case, Plaintiffs' proposed claim-centric approach is contrary to the MPLS and the cases interpreting it. The MPLS, including its damages caps, applies

2

to "product liability actions" -- not just to individual products liability claims. MCL § 600.2946(a). The statute defines a "product liability action" to mean:

> an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property **caused by or resulting from** the production of a product.

*Id.* at § 600.2945(h) (emphasis added).

Notably, the statute uses the term "action," not the term "claim," which unambiguously demonstrates the legislature's intent to apply the damages cap to all actions where the causes of action necessarily rely on a product defect element. *Compare* MCL § 600.2945(h) *with* Mich. R. Civ. Pro. 2.101(A) ("There is one form of action known as a 'civil action'") *and* Mich. R. Civ. Pro. 2.111(A)(2)(b) (complaint may assert as many separate claims as the party has).

The plain language of the MPLS demonstrates that courts must look at the entire action, or the essence of the claims taken together, and cannot look at the title of a specific cause of action or only some elements of claims to determine whether the MPLS's damages caps apply. Plaintiffs' reference to a claim[1] as to which Polaris

---

[1] Plaintiffs attempt to backstop their claim-centric analysis by citing to cases about whether particular claims are tort or contract claims (*Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 683 N.W.2d 587 (2004) and *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 82, 559 N.W.2d 647, 657 (1997)). (Opp. at 10-11.) While the existence of a separate legal duty may impact whether a claim sounds in tort or contract, it has no bearing on whether the MPLS applies.

3

may have a separate legal duty is contrary to the plain language of the statute and simply irrelevant to the determination whether the MPLS damages caps apply.

## II. The Essence of Plaintiffs' Action Is A Products Liability Action Under The MPLS Because Products Liability Issues Predominate.

As noted above, where questions arise over whether an action is a products liability action or not, Michigan law requires courts to look at the essence of the action to determine whether the MPLS and its damages caps apply. *Heaton v. Benton Constr. Co.*, 286 Mich. App. 528, 780 N.W.2d 618 (2009); *Holbrook v. Prodomax Automation Ltd.*, No. 1:17-cv-219, 2021 U.S. Dist. LEXIS 178325 (W.D. Mich. Sep. 20, 2021). The "dual capacity doctrine," a workers compensation concept that Plaintiffs cite to by analogy, actually supports the "essence of the action" approach. In *Handley v. Wyandotte Chemicals Corp.*, 118 Mich. App. 423, 429, 325 N.W.2d 447 (1992), relied on by Plaintiffs, the court noted that "the dual capacity doctrine will not apply where the plaintiff's cause of action is, **in reality**, based upon the employer-employee relationship." 325 N.W.2d 450-51 (emphasis added). In other words, to determine the applicability of the "dual capacity doctrine," courts must look at the essence of the action, not just the labels applied to individual claims.

Here, Plaintiffs do not even attempt to argue that the essence of their action is anything other than a products liability action for purposes of the MPLS. Nor could they. Plaintiffs have asserted products liability claims against Polaris sounding in

4

negligence and breach of warranty for an alleged (though unspecified) defect in the vehicle's throttle.

Plaintiffs admit -- repeatedly -- that their negligent maintenance claim is based on the exact same unspecified defect as their products liability claims. (Opp. at 18 ("whether proper maintenance and inspection would or would not have revealed a defect in the throttle safety switch"); *id.* at 19 ("whether Defendant Polaris would have or should have discovered the improper functioning of the throttle safety switch through proper inspection and maintenance of the snowmobile"); *see also* 7-8; 20-21). In other words, Plaintiffs admit that their negligent maintenance claim does not and cannot stand without the same alleged defect that makes up their products liability claims. For that reason, Polaris characterized this claim as derivative -- it depends on the existence of a product defect.

The three hypothetical fact patterns described in Plaintiffs' Opposition only reinforce the logic that Plaintiffs' derivative negligent maintenance claims should be subject to the MPLS damages caps. In Plaintiffs' first hypothetical, they ask the Court to assume that Polaris owned a defective snowmobile manufactured by another company, failed to inspect the vehicle, and thus failed to discover the defect. (Opp. at 13-14.) In the third hypothetical, they ask the Court to assume that a private individual owned an unspecified manufacturer's defective snowmobile, failed to maintain it, and thus failed to discover the defect. (Opp. at 14-15.) According to

5

Plaintiffs, the manufacturer responsible for the defect should face capped liability, while the owners (whether Polaris as suggested in the first hypothetical or a private individual as suggested in the third hypothetical) who simply had the misfortune to not uncover the defect face uncapped liability. This outcome is contrary to the plain language of the MPLS, which requires that the cap applies because the essence of those actions is an alleged product defect.

Plaintiffs' second hypothetical likewise supports Polaris's Motion for Partial Summary Judgment. In it, Plaintiffs ask the Court to assume that Polaris owns a snowmobile that it manufactured, the snowmobile was damaged, and Polaris knew about the damage but failed to repair it. (Opp. at 14.) Polaris agrees that this would not be a products liability action subject to the MPLS. There is no design or manufacturing defect at issue, and the owner's negligence is not dependent on or derivative of a product defect. Under this hypothetical, the action involves the alleged negligence of the vehicle owner causing the condition resulting in injuries, not a condition caused by an alleged defective product. Therefore, that action is not a products liability action and the MPLS cap would not apply. Notably, this fact pattern does not even resemble the facts of this case. Here, unlike Plaintiffs' second hypothetical, there is no dispute that the alleged defects with the throttle were not caused by any lack of maintenance. (*See, e.g.*, Kinder Dep., 131:1-11 [DKT 25-3])

## **CONCLUSION**

For these reasons, Polaris respectfully requests the Court grant its Motion for Partial Summary Judgment.

DATED: December 10, 2021               Respectfully submitted,

*/s/ Dawn M. Beery*

Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192
E-mail:  dbeery@beneschlaw.com

Mark K. Norris (OH 0092222)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
E-mail: mnorris@beneschlaw.com

*Attorneys for Defendant Polaris Industries Inc*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.

/s/ *Dawn M. Beery*
Dawn Beery