UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH HOLMES, *et al.*,

      Plaintiffs,

vs.

POLARIS INDUSTRIES, INC.,

      Defendant.

_____/

Case No. 20-CV-11390

HON. GEORGE CARAM STEEH

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 25)**

Plaintiff Deborah Holmes brings this action against defendant Polaris Industries, Inc. ("Polaris") arising from injuries she suffered when riding a snowmobile manufactured and owned by Polaris. Holmes asserts an implied warranty and negligence claim against Polaris. The matter is before the Court on Polaris's motion for partial summary judgment on the sole issue of whether plaintiffs' claims are subject to the noneconomic damages cap under Michigan's Product Liability Statute, MCL §§ 600.2945-2949a. Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons set forth below, defendant's motion for partial summary judgment is GRANTED.

-1-

## **FACTUAL BACKGROUND**

On February 9, 2019, Deborah Holmes was riding a 600 Switchback Pro S snowmobile that was manufactured by Polaris. The snowmobile was owned by Polaris since the time of its manufacture and was leant out to a friend of Holmes's who was an employee of Polaris as part of an employee "Check-Out" program. While Holmes was riding the snowmobile across a road, it began to accelerate toward a grouping of trees even though Holmes released the throttle of the snowmobile.

Holmes's son, David, was riding his own snowmobile and was able to observe what happened as the snowmobile began to accelerate. David heard a rapidly rising engine pitch, saw that his mother attempted to jump off the snowmobile and, as a first step in doing so, raise both of her hands completely off the handlebars and therefore off the throttle control. David specifically noted that there was no drop in engine pitch and no deceleration of the snowmobile to indicate any closing of the throttle. David next observed the snowmobile strike a tree while Holmes was still on it. As a result of the collision with the tree, Holmes sustained multiple injuries, including fractures to her pelvis and femur.

Plaintiffs assert that the accident was caused by a stuck throttle event. A stuck throttle event is a situation where the throttle lever is

released by the rider, but the throttle cable or plates do not return to the normal closed position. This allows the snowmobile's engine to maintain its speed according to the last throttle position even without additional rider input. Because of the possibility of stuck throttle events in some weather and riding conditions (i.e., heavy precipitation or very deep snow), the snowmobile is equipped with a throttle release switch ("TRS"). The TRS is designed to detect a stuck throttle and respond by shutting down the snowmobile's engine.

On June 1, 2020, plaintiffs initiated this case, alleging two counts against Polaris. One count is for breach of implied warranty based on an alleged manufacturing defect in the snowmobile's throttle shutoff system. The second count is a negligence claim alleging that Polaris, as the manufacturer, negligently designed or manufactured the snowmobile such that the throttle was susceptible to getting stuck in the open position. The negligence claim additionally alleges that Polaris, as the owner of the snowmobile, had a duty to inspect, maintain and keep the snowmobile in a safe operating condition. Regarding this second aspect of the negligence claim, plaintiffs allege that Polaris failed to inspect the TRS as recommended in the Owner's Manual, and therefore "failed to appreciate

the fact that it was experiencing numerous stuck-throttle events prior to the time that Deborah was injured." (Complaint ¶ 35).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all

reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

However, when defendant's motion for summary judgment is based on an affirmative defense for which defendant bears the burdens of production and persuasion, defendant must satisfy a "substantially higher hurdle". *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (citation omitted). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Id*. (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)).

## **ANALYSIS**

### I.  **Michigan Law Caps Noneconomic Damages in Product Liability Actions**

Michigan's Product Liability Statute ("MPLS") limits the amount a plaintiff may recover for noneconomic damages in a product liability action. MCL 600.2946a(1). The MPLS provides that "the total amount of damages for noneconomic loss shall not exceed $280,000, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function." The MPLA broadly defines a "product liability action" as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." MCL § 600.2945(h).

## II. Plaintiffs' Product Liability Claim

Plaintiffs allege two manufacturing defect theories. First, plaintiffs allege that "[t]he Snowmobile was defective when it left the manufacturer's control . . . because it had a tendency for the throttle to stick in the open position." (Compl. at ¶ 23). Second, plaintiffs allege that the snowmobile's TRS was defective because it intermittently failed to completely shut the engine down when it detected a stuck throttle condition. (Robert S. Kinder Dep. 279). Plaintiffs do not dispute that their allegations that Holmes's injuries were caused by the stuck throttle and/or a defective TRS assert a product liability claim, which is subject to the MPLS's noneconomic damages cap.

## III. Plaintiffs' Negligence Claim

The disputed issue for purposes of the pending motion relates to whether the MPLS's noneconomic damages cap applies to plaintiffs' negligence claim against defendant as the *owner* of the snowmobile. Plaintiffs contend that defendant had a separate and distinct duty as the owner of the snowmobile because it made the snowmobile available for recreational use to its employees and other permitted users. Plaintiffs' claim in this regard asserts that defendant was negligent in failing to inspect the TRS as called for in the Owner's Manual. The theory is that if

defendant had inspected the TRS as instructed, it would have learned about the numerous stuck-throttle events and the snowmobile would not have been leant out until the manufacturing defect was fixed. From there it follows that if not for defendant's negligence, Holmes would not have been injured.

Defendant argues that this negligence claim is derivative of plaintiffs' product liability claim because the injury was caused by a manufacturing defect. The injury was caused by the alleged defect in the throttle shut-off system, and while an inspection might have discovered the alleged defect, the failure to inspect did not cause the throttle shutoff system to fail. In support of this argument, defendant cites to testimony by plaintiffs' expert witness, Mr. Kinder, that defendant's missed inspections did not cause or create the defect. (Kinder Dep. at 131). Therefore, defendant maintains that plaintiffs' negligence theory is in essence a product liability claim, as it depends on the existence of a manufacturing defect that caused the accident. For this reason, defendant seeks a ruling from the Court that plaintiffs' negligence claim is subject to the MPLS's cap on noneconomic damages. The Court notes that defendant does not move for summary judgment on plaintiffs' negligence claim itself.

Michigan courts take a broad view the MPLS to cover a wide range of product liability actions, regardless of how the cause of action is labeled. *Trees v. Pfizer, Inc.*, No. 338297, 2018 WL 6710594, at *3 (Mich. Ct. App. Dec. 20, 2018). As previously stated, the MPLS defines a "[p]roduct liability action" as "an action based on a legal or equitable theory brought . . . for injury to a person . . . caused by or resulting from the production of a product." MCL § 600.2945(h). Plaintiffs' argument is that defendant's role as the owner of the snowmobile gave it a separate legal duty to inspect and maintain it in a safe condition. However, whether plaintiffs have a negligence claim against defendant does not answer the question whether the MPLS damages cap applies. To determine whether a negligence claim is a "product liability action" the Court looks at the essence of plaintiffs' action as a whole. *See, Heaton v. Benton Constr. Co.*, 286 Mich. App. 528, 532-33 (2009).

The essence of plaintiffs' action is that Holmes was injured because of a defect in the throttle system. The negligence claim against defendant consists of two theories – negligent design or manufacture as the manufacturer and negligent failure to discover the defect as the owner. Under both theories, the essence of the claim is based on product liability. There can only be a negligent failure to identify a manufacturing defect if

the manufacturing defect exists in the first place. Plaintiffs' allegations and expert's opinions agree that without the alleged defect there would have been no accident. At its essence, plaintiffs' negligence theory is a product liability action and is therefore subject to the MPLS cap on non-economic damages.

## CONCLUSION

For the reasons stated above, defendant's motion for partial summary judgment is GRANTED.

Dated: March 8, 2022

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE