## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH HOLMES, *et al.*, | CASE NO. 2:20-cv-11390-GCS-RSW |
| Plaintiffs, | Judge George C. Steeh |
| v. | Magistrate Judge David R. Grand |
| POLARIS INDUSTRIES INC., | **DEFENDANT POLARIS INDUSTRIES INC.'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT ROBERT KINDER** |
| Defendant. | |

| | |
|---|---|
| Jeffrey T. Stewart (P24138) | Matthew E. Nirider (IL 6290343) |
| David S. Shiener (P78608) | Dawn M. Beery (IL 6256520) |
| **JOHNSON LAW, PLC** | BENESCH, FRIEDLANDER, COPLAN |
| Attorneys for Plaintiffs | & ARONOFF LLP |
| 30445 Northwestern Hwy., Ste. 250 | Attorneys for Defendant |
| Farmington Hills, Michigan 48334 | 71 S. Wacker Drive, Suite 1600 |
| (248) 785-0102 | Chicago, IL  60606 |
| jts@sslawpc.com | P: (312) 212-4968 F: (312) 767-9192 |
| dss@sslawpc.com | mnirider@beneschlaw.com |
| | dbeery@beneschlaw.com |

Defendant Polaris Industries Inc. ("Polaris"), by and through its attorneys, respectfully moves the Court to exclude the expert testimony of Plaintiffs' expert, Robert Kinder.

In support of this Motion, Polaris relies on the facts, law, and argument set forth in the accompanying Brief in Support and supporting exhibits.

Pursuant to Local Rule 7.1(a) of the United States District Court for the Eastern District of Michigan, counsel for Polaris conferred in good faith with Plaintiffs' counsel on May 18, 2022 and explained the nature of the motion and its legal basis.  Polaris requested, but did not obtain, concurrence in the relief sought.

DATED: May 18, 2022

Respectfully submitted,

s/ *Matthew E. Nirider*

Matthew E. Nirider (IL 6290343)
Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
mnirider@beneschlaw.com
dbeery@beneschlaw.com

*Attorneys for Defendant Polaris Industries Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.


*/s/ Matthew E. Nirider*
Matthew E. Nirider

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH HOLMES, *et al.*, | CASE NO. 2:20-cv-11390-GCS-RSW |
| Plaintiffs, | Judge George C. Steeh |
| v. | Magistrate Judge David R. Grand |
| POLARIS INDUSTRIES INC., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

| | |
|---|---|
| Jeffrey T. Stewart (P24138)<br>David S. Shiener (P78608)<br>**JOHNSON LAW, PLC**<br>Attorneys for Plaintiffs<br>30445 Northwestern Hwy., Ste. 250<br>Farmington Hills, Michigan 48334<br>(248) 785-0102<br>jts@sslawpc.com<br>dss@sslawpc.com | Matthew E. Nirider (IL 6290343)<br>Dawn M. Beery (IL 6256520)<br>BENESCH, FRIEDLANDER, COPLAN<br>& ARONOFF LLP<br>Attorneys for Defendant<br>71 S. Wacker Drive, Suite 1600<br>Chicago, IL  60606<br>P: (312) 212-4968; F: (312) 767-9192<br>mnirider@beneschlaw.com<br>dbeery@beneschlaw.com |

## MEMORANDUM IN SUPPORT OF POLARIS
## INDUSTRIES INC.'S MOTION TO EXCLUDE THE
## <u>TESTIMONY OF PLAINTIFFS' EXPERT ROBERT KINDER</u>

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................ ii

ISSUE PRESENTED ............................................................... 1

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................. 2

INTRODUCTION ................................................................... 3

BACKGROUND ................................................................... 4

    A.    Stuck Throttle Opinion ................................................ 6

    B.    Throttle Release Switch Opinion ..................................... 6

    C.    Lack of Maintenance Opinion ........................................ 7

LEGAL STANDARD ............................................................... 8

ARGUMENT ....................................................................... 9

    A.    Mr. Kinder Lacks the Qualifications to Serve as an
Expert in this Case .................................................... 9

    B.    Mr. Kinder's Opinions Are Unreliable and Should be
Excluded. ............................................................ 13

        1.    Mr. Kinder's Opinion That A Stuck Throttle
Occurred Cannot Be Tested, Is Not Based On
Scientific Data Or Technical Grounds, And Is Not
Based On A Reliable Methodology. ...................... 15

        2.    Mr. Kinder's Opinion That The Subject
Snowmobile's Throttle Release Switch Failed to
Shut Down The Subject Snowmobile In Response
To A Stuck Throttle Condition Is Based On A
Faulty Methodology And Unreliable Data. ............... 19

        3.    Mr. Kinder's Opinion That A Lack Of
Maintenance Contributed To Plaintiff's Accident
Is Pure Speculation ...................................... 24

    C.    Mr. Kinder's Opinions are Not Relevant and Will Not
Assist the Trier of Fact. ............................................. 27

CONCLUSION .................................................................... 29

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ask Chemicals, LP v. Computer Packages, Inc.*,
    593 F. App'x 506 (6th Cir. 2014) ....................................................................8

*Avendt v. Covidien Inc.*,
    262 F. Supp. 3d 493 (E.D. Mich. 2017) .....................................................22, 23

*Berry v. Crown Equip. Corp.*,
    108 F. Supp. 2d 743 (E.D. Mich. 2000) ....................................................10, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)...............................................................................*passim*

*Greenwell v. Boatwright*,
    184 F.3d 492 (6th Cir. 1999) ......................................................................18

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod.*
    *Liab. Litig. (No II) MDL 2502*,
    892 F.3d 624 (4th Cir. 2018) ......................................................................19

*Meemic Ins. Co. v. Hewlett-Packard Co.*,
    717 F. Supp. 2d 752 (E.D. Mich. 2010) ........................................................22

*In re Paoli RR Yard PCB Litigation*,
    916 F.2d 829 (3d Cir.1990) ..........................................................................9

*Pride v. BIC Corp.*,
    218 F.3d 566 (6th Cir. 2000) ........................................................................9

*Siegel v. Dynamic Cooking Sys., Inc.*,
    501 F. App'x 397 (6th Cir. 2012) ................................................................14

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ........................................................................8

*Whirley v. Kawasaki Motors Corp. U.S.A.*,
    No. 1:04-CV-1145-T-AN, 2006 WL 8435273 (W.D. Tenn. May
    12, 2006) ........................................................................................9, 13

**Other Authorities**

Fed. R. Civ. P. 702 ............................................................................................*passim*

**ISSUE PRESENTED**

The issue presented in this Motion is whether Plaintiffs' expert, Robert Kinder, should be excluded as an expert witness from the trial of this matter, pursuant to Fed. R. Evid. 702 and *Daubert* because Mr. Kinder is unqualified, his proffered opinions are conclusory and unverifiable, and his testimony will not assist the jury in assessing Plaintiffs' claims.

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Fed. R. Evid. P. 702

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)

# INTRODUCTION

Defendant Polaris Industries Inc. ("Polaris") asks that the Court bar Robert Kinder's testimony under Rule 702 of the Federal Rules of Evidence and *Daubert.* Plaintiffs intend to offer expert testimony from Mr. Kinder to help prove that Plaintiff Deborah Holmes lost control of a Polaris snowmobile and crashed because of a defect that led to a stuck-throttle event and failure of the engine to shut down. Mr. Kinder, however, is demonstrably unqualified to offer any expert opinions concerning the subject snowmobile. He has no specific education or experience on snowmobile riding, snowmobile repair, snowmobile throttle systems, or snowmobile safety assurance systems. Moreover, unsurprisingly, Mr. Kinder has not and cannot *identify a defect*, let alone identify the *cause* of the alleged stuck throttle or engine shut down failure. Mr. Kinder instead offers nothing but vague, unsupported and purely speculative opinions that lack any reference to reliable principles and methods. When Mr. Kinder could not replicate the stuck throttle event on the subject snowmobile, he supported his opinion exclusively by cherry-picking favorable witness testimony without any scientific basis or methodology. When Mr. Kinder could not identify a defect that allegedly prevented the engine from shutting down, he created his own testing methodology specifically for this case to deduce that there was a "probability" that the subject snowmobile's engine did not shut down. And when Mr. Kinder could not conclude that Polaris's alleged failure to service the

3

subject snowmobile caused Deborah Holmes's injuries, he assumed that a defect existed that Polaris could have "potentially" identified. As such, Mr. Kinder cannot offer any specialized knowledge or reliable opinions regarding the subject snowmobile's throttle system that could help the jury understand the evidence at issue. For these reasons, Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) compels the exclusion of Mr. Kinder's proffered testimony.

## BACKGROUND

This is a snowmobile products liability action arising from a February 9, 2019 single-vehicle snowmobile accident that occurred when Plaintiff Deborah Holmes lost control of a 2018 Polaris Switchback 600 Pro S snowmobile (the "Subject Snowmobile"), collided with a group of trees, and was injured. At the time of the accident, Plaintiff was riding in a group with five others on a groomed trail near Munising, Michigan. (Ex. 1, Compl. ¶¶ 5-6, 9.)  Plaintiff was operating the Subject Snowmobile – which a family friend and member of the riding party had borrowed from Polaris as part of Polaris's Employee Check-out Program – for the first time on the date of the accident. (*Id.* at ¶¶ 5, 25; Ex. 2, D. Holmes Dep. 9:10-18, 39:1-16.)  After four riders safely crossed a highway, it was Plaintiff's turn to cross. (Ex. 2, D. Holmes Dep. 57:24-58:15.)  Plaintiff crossed the road and applied the throttle to speed up to get over the berm on the far side of the highway. (*Id.* at 69:6-9.)

4

Plaintiff then contends that the Subject Snowmobile's throttle stuck, causing Plaintiff to accelerate and lose control of the Subject Snowmobile and hit a group of trees, resulting in injuries to her legs and pelvis. (Ex. 1, Compl. ¶¶ 12, 16-17; Ex. 2, D. Holmes Dep. 121:6-14.)

A stuck throttle event occurs when the snowmobile's throttle lever, which is connected to the throttle body by a mechanical cable, is released by the rider but the throttle cable or plates do not return to the normal closed position. (Ex. 3, Robert Kinder Dep. at 26:10-19.) This results in the snowmobile's engine maintaining its speed based on the last throttle position despite the throttle lever being released. Because of the possibility of stuck throttle events occurring in some weather and riding conditions (i.e., heavy snow or freezing rain, riding in very deep snow, or tipping/rolling the snowmobile in deep snow),[1] the snowmobile is equipped with a throttle release switch ("TRS"). The TRS is designed to detect a mismatch between the throttle lever position and the throttle plate position, and respond by shutting down the snowmobile's engine. (*Id.* at 164:20-165:1.)

According to Plaintiffs' theory of the case, for Plaintiff's accident to occur, the Subject Snowmobile must have experienced two distinct conditions: 1) the Subject Snowmobile must have suffered a stuck-throttle; and 2) the Subject

---

[1] None of these weather or riding conditions existed on the date of the accident and Plaintiff had not tipped or rolled her snowmobile on the date of the accident. (Ex. 2, D. Holmes Dep. 54:23-25, 110:11-15.)

Snowmobile's throttle release switch must have failed to shut the engine down in response to that stuck-throttle condition. If either one of these conditions was not met, then the accident could not have happened as Plaintiffs contend. In support of their allegations, Plaintiffs retained Robert Kinder as an expert witness who intends to offer the following opinions:

###    A.    Stuck Throttle Opinion

Mr. Kinder contends that a stuck throttle event caused the accident. Mr. Kinder was not, however, able to replicate a stuck throttle condition on the Subject Snowmobile. Moreover, not only does Mr. Kinder fail to identify a single "defect" in the snowmobile that would have caused the alleged stuck throttle, but he admits that neither the physical evidence nor test results can prove a stuck throttle. He simply relies on certain witness testimony (while ignoring other contrary testimony) to support his opinion that the throttle stuck, all while asserting that he expresses "no opinion on the credibility of the witnesses" because "that is not within the scope of [his] assignment or expertise."  (Ex. 4, Kinder Rep. at p. 11.)

###    B.    Throttle Release Switch Opinion

Mr. Kinder next offers the opinion that "the engine was capable of failing to shut down as designed when a throttle stuck condition occurred."  (Ex. 4, Kinder Rep. at p. 12.)  The Court should focus on the precise words of this opinion — all Mr. Kinder can say is that the machine was "capable" of not shutting down in

response to a stuck throttle condition. He cannot explain *why* the snowmobile did not shut down because he cannot identify a defect. In forming his opinion, Mr. Kinder relies on his homemade "testing" of the Subject Snowmobile's throttle release switch and a flawed understanding of certain Stuck Throttle Error codes stored in the Subject Snowmobile's ECU.

### C.    Lack of Maintenance Opinion

Despite Mr. Kinder's admission that a lack of maintenance *did not cause* the alleged stuck throttle or TRS failure (Ex. 3, Kinder Dep. at 131:1-132:9), Mr. Kinder opines that there is a probability that routine maintenance of the Subject Snowmobile would have detected the alleged issue with the TRS system. But the Court will recall that Mr. Kinder cannot explain *what* that alleged issue might be. So instead, Mr. Kinder asserts, without any scientific or methodological basis at all, that because flawed testing suggested a 70% failure rate for the TRS (which is incorrect), there is a nearly 100% probability that the failure would have shown up during one of four scheduled maintenance intervals. However, this opinion is based on an unsupported assumption that the alleged defect existed since the time of manufacture of the Subject Snowmobile, despite Mr. Kinder's acknowledgement that he cannot express any opinion regarding when the alleged defect came into existence. This is precisely the sort of speculation-cloaked-as-science that *Daubert* and its progeny are intended to exclude.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs expert testimony. It provides that a qualified expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  District courts serve as gatekeepers in ensuring that expert testimony satisfies Rule 702.  *See Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 509 (6th Cir. 2014); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). The importance of the gatekeeping requirement cannot be overstated. "The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). As such, Rule 702 requires "more than a subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675 (6th Cir. 2010) (observing that "the courtroom is not a place for scientific guesswork, even of the inspired sort") (citation omitted.)

## ARGUMENT

Mr. Kinder's expert testimony fails all three prongs of the Daubert analysis and should be excluded. First, Mr. Kinder is unqualified to offer any of the aforementioned opinions. Second, Mr. Kinder's opinions lack the requisite indicia of reliability required for admissibility. Finally, Mr. Kinder's speculative opinions will not assist the trier of fact in reaching a determination and are likely to confuse the jury. Because Mr. Kinder's anticipated testimony does not and cannot meet the standard for admissibility under *Daubert*, it should be excluded in its entirety.

### A. Mr. Kinder Lacks the Qualifications to Serve as an Expert in this Case.

Before a court may allow a witness to testify as an expert, it must affirmatively find that the proffered witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. While this requirement is often liberally construed, the Sixth Circuit has acknowledged that it "does not mean that a witness is an expert simply because he claims to be." *Pride v. BIC Corp*., 218 F.3d 566, 577 (6th Cir. 2000) (citing *In re Paoli RR Yard PCB Litigation*, 916 F.2d 829, 855 (3d Cir.1990)). An expert's general qualifications are not enough. *See Whirley v. Kawasaki Motors Corp. U.S.A.*, No. 1:04-CV-1145-T-AN, 2006 WL 8435273, at \*5 (W.D. Tenn. May 12, 2006) (acknowledging that general qualifications alone do not provide sufficient expertise to testify about the specific issues at hand). If a witness is relying primarily on experience, then the witness must

9

explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See* Fed. R. Evid. 702, Advisory Comm. Notes.

As gatekeeper, the Court must examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 749-52 (E.D. Mich. 2000) (excluding safety consultant expert offering opinion on allegedly defective forklift because, *inter alia*, despite experience with general automobile manufacturing, expert never published articles on forklifts, never designed or installed safety components on a forklift, and never serviced a forklift) (citation omitted.) Here, Kinder lacks the knowledge, skill, experience, training, or education necessary to provide expert testimony concerning Plaintiffs' defect theory.

This is a snowmobile case. Snowmobiles lack front wheels, and instead have skis that will naturally search out the easiest path through imperfect terrain. Further, as opposed to drive wheels that connect to an engine via a transmission, a snowmobile is powered by a rotating track that makes contact with the snow. The handling characteristics and technique of a snowmobile are totally unlike those of wheeled vehicles. (Ex. 5, M. Warner Dep. 25:6.)  Mr. Kinder would nonetheless have the jury believe that a snowmobile is just like any other engine-powered vehicle when it absolutely is not. This is unsurprising since Mr. Kinder has no specific

10

*education* on *snowmobile* riding, *snowmobile* repair, *snowmobile* throttle systems, or *snowmobile* safety assurance systems. (Ex. 3, Kinder Dep. 19:3-5; 19:25-20:4.) His educational background is limited to courses on *vehicle* dynamics, control systems, and electronic data recorders. (Ex. 3, Kinder Dep. 61:19-62:9, 65:10-15.)

Notwithstanding his lack of relevant education, Mr. Kinder's testimony demonstrates that his lack of snowmobile-specific expertise makes him unqualified to serve as an expert in this case. The most glaring example is Mr. Kinder's lack of any knowledge of the unique potential causes of stuck throttles on snowmobiles. For example, Mr. Kinder also did not know that, most often, the ice or snow buildup happens when riding in wet snow conditions, when there is precipitation, or if the vehicle was rolled over, forcing the throttle controls into the snow. (Ex. 3, Kinder Dep. 39:18-21; 40:5-17.)   The first time Mr. Kinder even contemplated the snowmobile-specific causes of stuck throttles was when asked about it in his deposition:

> Q. Are you aware of any occurrences where precipitation actually caused a stuck throttle?
>
> A. Aside from what's been provided to me, I don't know of any cases, no.
>
> . . . .
>
> Q. All right. Let's break it down a little bit. Is it less common for throttles to stick on a groomed trail versus other kinds of riding?
>
> A. I don't know that other than you telling me prior.

Q. Is it less common for a throttle to stick on a dry day than on a day with a lot of precipitation?

A. I'd expect that's fair.

Q. And is it less common for a throttle to stick when the vehicle hasn't been tipped or rolled than if it has been tipped or rolled in the snow?

A. You could probably make that argument, sure.

(Ex. 3, Kinder Dep. 39:18-21; 40:14-24.)

Moreover, Mr. Kinder has no relevant *experience* necessary to render expert opinions regarding the alleged defects in this case. This case is Mr. Kinder's first opportunity to offer opinions regarding snowmobiles or any alleged snowmobile defect. (Ex. 3, Kinder Dep. 13:9-18.) He has no professional experience with snowmobiles whatsoever. Moreover, Mr. Kinder admits that he has only ridden a snowmobile for a few hours two or three times in his life, and he has not ridden a snowmobile at all in the past 15 years. (Ex. 3, Kinder Dep. 7:20-8:3, 8:7-10.). Mr. Kinder did not interview or speak with any experienced snowmobile riders. (Ex. 3, Kinder Dep. 14:23-25; 17:15-18.). He has no knowledge of the differences in riding tactics between groomed trails and various other terrains, like deep snow or mountain riding. (Ex. 3, Kinder Dep. 9:25; 10:1-12.)  He has *never inspected, tested, or repaired* any snowmobile prior to this litigation. (*Id.* at 13:14-24; 19:8-11.)

Simply put, Mr. Kinder stretches the bounds of credulity by claiming to be a snowmobile expert with no specialized education or training related to snowmobiles

or their throttle assemblies and having ridden a snowmobile for only several hours more than a decade ago. He fails to explain how his generalized mechanical engineering background applies to the conclusions he reached regarding the throttle system in the Subject Snowmobile, why that experience is a sufficient basis for his opinions, and how that experience is reliably applied to the facts of this case.

In light of Mr. Kinder's complete lack of relevant educational credentials, experience, training, skill, or knowledge with respect to the Subject Snowmobile's throttle system design and maintenance, Mr. Kinder is not qualified to provide opinions on any of these topics and should not be permitted to testify as an expert witness. *Whirley*, 2006 WL 8435273, at *5 ("Despite [expert's] extensive credentials and his expertise in *mechanical engineering*," expert testimony excluded because he had "very limited experience *with ATVs* . . . in areas not germane to this litigation.") (emphasis added).

### B.    Mr. Kinder's Opinions Are Unreliable and Should be Excluded.

Even if the Court deems Mr. Kinder qualified to testify as an expert, the Court should exclude his opinions regarding the alleged defect in the Subject Snowmobile's throttle system because these opinions are patently unreliable. Not a single opinion that Mr. Kinder proffers is rooted in scientifically valid principles or methods. Simply put, Mr. Kinder did not conduct any reliable testing based on industry-standard methodology to support his speculative opinions that the Subject

Snowmobile's throttle system failed. His "methodology" is based only upon witness testimony and an erroneous testing procedure.

When evaluating whether expert testimony is rooted in a reliable methodology and scientifically valid, courts principally look to whether: 1) the expert's hypothesis can be or has been tested; 2) the expert's methodology has been subjected to peer review; 3) there is a significant rate of error associated with the methodology; and 4) the methodology is generally accepted within the scientific community. *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786; *Berry*, 108 F. Supp. 2d at 749. Other factors that guide courts when examining an expert's methodology include whether: (1) the expert will testify based on independent research or whether the opinion was developed expressly for purposes of litigation; (2) the expert has unjustifiably extrapolated to an unfounded conclusion; (3) the expert has adequately accounted for obvious alternative explanations; (4) the expert is exercising the same care as would be in their regular professional work; and (5) the field of expertise claimed by the expert is known to reach reliable results for the type of opinion offered. *Siegel v. Dynamic Cooking Sys., Inc.*, 501 F. App'x 397, 403 (6th Cir. 2012). In other words, Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles.

    1.   <u>Mr. Kinder's Opinion That A Stuck Throttle Occurred Cannot Be Tested, Is Not Based On Scientific Data Or Technical Grounds, And Is Not Based On A Reliable Methodology.</u>

First, Mr. Kinder does not have any scientific data or technical grounds to support the conclusion that a stuck throttle event occurred on the date of Plaintiff's accident. For Plaintiff's accident to occur, the Subject Snowmobile must have experienced two distinct conditions: 1) the Subject Snowmobile must have had a stuck-throttle; and 2) the Subject Snowmobile's throttle release switch must have failed to shut the engine down in response to that stuck-throttle condition. With regard to the existence of a stuck-throttle condition, Mr. Kinder's expert report is completely void of any physical evidence, research, studies, or publications. (*See* Ex. 4, Rep. of R. Kinder.)  During the one requested inspection that lasted a "couple hours," Mr. Kinder was never able to recreate a stuck throttle condition. (Ex. 3, Kinder Dep. 175:4-10; 218:25-219:1) "[W]e know that we tested it, and it didn't stick. It moved freely during our testing."  (*Id.*). Nor did he seek to perform any destructive testing of the Subject Snowmobile or TRS. (Ex. 3, Kinder Dep. 173:11-174:1.) Moreover, he never visited the scene of the accident and did not perform an accident reconstruction. (Ex. 3, Kinder Dep. 46:17-47:1.)

In an apparent attempt to account for the lack of evidence that a stuck throttle event occurred, Mr. Kinder admits that he relies solely on witness testimony to support his opinion:

> Q. In your opinion, what caused the stuck throttle in this accident?
>
> A. Well, we went over most of that, but there are several possibilities. And essentially, *we don't have evidence other than testimony to rely as a basis to determine whether what the failure mode for the stuck throttle was*. . . .

(Ex. 3, Kinder Dep. 174:2-8.) (emphasis added.) And even assuming that Mr. Kinder could properly rely only upon witness testimony and not upon scientifically valid methodology (which he cannot), Mr. Kinder does not rely on *all* eyewitness testimony. Instead, he picks and chooses which testimony he finds credible and which he chooses to ignore. By way of example, Mr. Kinder concedes that he did not rely on Deborah Holmes's testimony that the Subject Snowmobile accelerated beyond the amount of throttle she gave it because that could not possibly be accurate:

> Q. … And I asked, in your opinion did the snowmobile accelerate faster than the amount of throttle that you had given it? And she answers absolutely. Do you see that?
>
> A. I see that.
> …
>
> Q. Do you believe that that testimony accurately reflects what occurred leading up to the accident?
>
> A. It appears to be her perception, but I still agree that it could not accelerate beyond what was applied by her. If that was something that she perceived, I can't speak to that. But in regards to accuracy, I think I know that if you are experiencing acceleration, it has to be from the amount that was applied to it.
>
> Q. So you would agree that this testimony is wrong, correct?
>
> A. Yes.

16

Q. And you don't rely on this testimony in forming your opinions, correct?

A. No.

(Ex. 3, Kinder Dep. at 101:24-102:23.)   Mr. Kinder then decided that Deborah

Holmes's testimony regarding the timing of the accident was similarly not credible:

Q. … I asked Ms. Holmes, do you recall trying to apply the brakes to slow down the sled, and she answered I don't remember that. It was a split second. The tree was there. Do you see that testimony?

A. Yes.
…

Q. And do you believe that that testimony accurately reflects the events leading up to the accident?

A. I don't believe it accurately represents the events. It could accurately represent her perception, but not the events.

Q. So you believe that that testimony is false?

A. I believe that it was longer than a split second.

(Ex. 3, Kinder Dep. at 103:23-104:14.)   Mr. Kinder does, however, rely on Ms.

Holmes's testimony for the justification for why she did not hit the brakes or the kill

switch before impacting the trees:

Q. . . . I asked Ms. Holmes, so your position is you didn't hit the brakes or the kill switch, or steer away from the trees because you couldn't reach the handlebars? And she answered, and I only had a second. The tree was there. Do you see that?

A. Yes, I do.
...

17

> Q. Do you believe that that accurately reflects the events leading up to this accident?
>
> A. Yes.
>
> Q. You believe that she only had a second, and the tree was there?
>
> A. No, I believe that that was her perception that she only had a second, yes.
>
>          \*      \*      \*      \*      \*      \*
>
> Q. Okay. So you're going to rely on the part of her testimony that says her hands were thrown back, correct?
>
> A. I will assess whether that's accurate.
>
> Q. Well, do you think it's accurate? You've assessed this case for two years.
>
> A. Yes, I do think it's accurate that she could not get to the kill switch, yes.

(*Id.* at 105:11-106:2, 109:10.) By simply ignoring any testimony that is inconsistent with his theory, Mr. Kinder does nothing more than make credibility determinations regarding Deborah Holmes's testimony. *See* G*reenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) ("Regardless of the intent or motivation of the expert in commenting on the eyewitness testimony, we agree . . . that the testimony regarding the credibility of eyewitness testimony was improper.").

As yet another example, Mr. Kinder completely ignores David Holmes's statement given just days after the accident and instead relies on his directly contrary deposition testimony:

> Q. Do you rely for your opinion that the throttle stuck 180 feet from the trees on David Holmes' testimony, that that's what he saw, correct?
>
> A. Yes.
>
> Q. But you acknowledge that that testimony is inconsistent with the statement he gave just days after the accident?
>
> A. I do.

(Ex. 3, Kinder Depo at 128:13-20.) This "cherry-picking" approach "undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 634-35 (4th Cir. 2018) (affirming district court's exclusion of expert because expert's report included the results of only the tests he performed that supported the plaintiffs' argument). In sum, Mr. Kinder's exclusive reliance upon favorable testimony and lack of any actual analysis or research renders his conclusion that the Subject Snowmobile suffered a stuck throttle completely unfounded.

        2.    <u>Mr. Kinder's Opinion That The Subject Snowmobile's Throttle Release Switch Failed to Shut Down The Subject Snowmobile In Response To A Stuck Throttle Condition Is Based On A Faulty Methodology And Unreliable Data.</u>

Mr. Kinder next contends that the Subject Snowmobile's throttle release switch was capable of failing to shut down the Subject Snowmobile as designed

when a stuck throttle condition occurred. Because the Subject Snowmobile's throttle never stuck during his testing, in order to test the TRS, Mr. Kinder physically manipulated the throttle lever and pivot pin to simulate a stuck-throttle condition. (Ex. 3, Kinder Dep. at 174:14-17;  219:16-220:24.)   The images below are from Polaris's Owner's Manual and describe how to perform a test of the TRS.



Mr. Kinder plainly performed this test improperly in a way that created self-serving and incorrect results. Mr. Kinder's testing of the throttle was not performed with the aid of any rig, blocking, or other mechanical device that would ensure the lever was consistently prevented from pivoting. By using only his fingers to hold the pivot pin still, the lever was not totally prevented from pivoting, which resulted in false indications of a malfunction.

According to Mr. Kinder, he performed the test "about 20" times and the TRS failed to shut the engine down "about 14" times. (*Id.* at 279:19-23.) Using nothing more than rudimentary statistics, Mr. Kinder concluded that if the Subject

20

Snowmobile experienced a stuck-throttle event, the TRS may fail to shut down the engine approximately 70% of the time. (*Id.* at 279:24-280:1.) Critically, however, none of his testing reliably supports the conclusion that a stuck-throttle event occurred at the time of Plaintiff's accident, or that the engine failed to shut down in response to that specific stuck throttle condition.

Mr. Kinder also erroneously relies on Stuck Throttle Error codes recorded in the Subject Snowmobile's engine control unit ("ECU") to support his opinion that the TRS failed to shut down the Subject Snowmobile at the time of the accident. The Subject Snowmobile's ECU is designed to record various faults or errors that might occur during the operation of the snowmobile, including a Stuck Throttle Error code. This code merely records a mismatch between the throttle lever position and the throttle body itself. There can be various reasons why this happens – including testing of the TRS. A Stuck Throttle Error code does not tell us how long the mismatch lasted, when it occurred, or whether the engine shutdown in response. While the Subject Snowmobile's ECU was found to contain 11 Stuck Throttle Error codes, it is completely unknown when these events happened, whether they lasted long enough to trigger the shut-down sequence, or whether the Subject Snowmobile shut down as designed. (*See id.* at 141:6-8 (explaining that there is "no way" to know when any stuck throttle code actually occurred because there is no associated time or mileage stamp).)  Given that there is no evidence that any Stuck Throttle Error

code was generated at the time of the accident, Mr. Kinder's reliance on these Stuck Throttle Error codes to support his stuck throttle and TRS failure opinion is nothing but "guesswork" that has no place in the courtroom. *Avendt v. Covidien Inc.*, 262 F. Supp. 3d 493, 518 (E.D. Mich. 2017).

Mr. Kinder transforms what amounts to a mere possibility of a TRS failure into an opinion that he claims is "within a reasonable degree of engineering certainty." (Ex. 4, Kinder Rep. at 10.) But as discussed above, Mr. Kinder cannot point to any failed component, does not identify any defective design, does not identify any manufacturing defect, admits that maintenance of the Subject Snowmobile played no role in causing the accident, and cannot verify when any particular stuck-throttle event occurred, including on the day of the accident. Still, he simultaneously assumes that two *merely possible* events actually occurred to form his opinions: (1) the Subject Snowmobile experienced a stuck-throttle, and (2) the engine did not shut down in response. (Ex. 4 Kinder Rep. at 11-12.)  Even then, he can only state that "there is ample evidence that the engine *was capable* of failing to shut down as designed when a throttle stuck condition occurred."   (*Id*. at 12 (emphasis added).) The fact that a machine is capable of some response is not probative of whether it actually responded in that manner. *Meemic Ins. Co. v. Hewlett-Packard Co*., 717 F. Supp. 2d 752, 769 (E.D. Mich. 2010) ("causation theories that are mere possibilities or, at most, equally as probable as other theories

are simply insufficient.") (internal quotation marks omitted.) As such, the "mere possibility" that the Subject Snowmobile failed to shut down in response to a stuck throttle is an opinion based only upon pure speculation without any objective, identifiable facts. This alone is fatal to Mr. Kinder's ability to testify as an expert in this case. *See Daubert*, 509 U.S. at 590.

Finally, because Mr. Kinder concludes that the Subject Snowmobile was "capable" of experiencing a stuck throttle and not shutting down, he has not adequately accounted for obvious alternative explanations. Namely, that either the Subject Snowmobile did not suffer a stuck throttle and, that if it did, the engine began to shut down in response. To be sure, the most obvious explanation for this accident is that Deborah Holmes unintentionally applied too much throttle as she traversed uneven terrain, lost control of the Subject Snowmobile, panicked, failed to apply either the brakes or the emergency stop button, failed to abandon the sled, and ultimately impacted the trees. Even experienced and skillful snowmobilers occasionally impact various objects. Mr. Kinder, however, ignores this probability entirely in a feeble attempt to shoehorn his unsupported engineering analysis into Plaintiffs' theory of the case. *Avendt*, 262 F. Supp. 3d at 531 ("The failure [of an expert] to consider other possible causes in [plaintiff's] case is a 'red flag' of unreliability.") (citations omitted).

3.      Mr. Kinder's Opinion That A Lack Of Maintenance Contributed
To Plaintiff's Accident Is Pure Speculation.

Mr. Kinder's final opinion is not that Polaris's alleged lack of maintenance of the Subject Snowmobile caused Plaintiff's accident but that, during routine vehicle maintenance, Polaris could have *potentially* identified an issue with the throttle and the engine's ability to shut down thereby allowing a repair prior to Plaintiff's accident. Mr. Kinder, who has no educational background or experience in snowmobile maintenance, bases this opinion on his own methodology created for this litigation. (Ex. 3, Kinder Dep. 8:1-3;151:10-152:-9). Specifically, Mr. Kinder contends that if Polaris followed the suggested maintenance schedule, there would have been four maintenance tests prior to the accident. Mr. Kinder utilizes his flawed "70 percent probability" conclusion that the Subject Snowmobile will experience a throttle failure to then "calculate [the] probability based on at least one failure in those four tests." (*Id.* at 151:10-152:9.) As Mr. Kinder himself acknowledges, there are several self-serving assumptions he made in relying upon this methodology, including the assumption that the alleged defect existed from the time the Subject Snowmobile was manufactured:

Q. Got it. But that calculation assumes that on all four of those occasions the alleged defect already existed?

A. Yes.

24

Q. So, in fact, if the defect didn't exist by 150 miles, then it's not four occasions where Polaris could have detected the alleged defect in the throttle safety switch. It's only three, right?

A. Sure.

Q. And if it didn't exist by 500 miles, then it's not four occasions on which Polaris could have detected the alleged defect in the throttle safety switch, it's two?

A. That's true.

Q. But if the defect didn't exist by 1,000 miles, then the probability that Polaris could have detected the alleged defect in the throttle safety switch is only one time, just the 2,000 mile check, right?

A. Just the 2,000, yes.

(*Id.* at 152:10-153:1.). Mr. Kinder's testimony begs the question: how can he offer a reliable opinion that Polaris could have "potentially" identified a defect when he cannot state with *any* certainty that a defect existed during each of the four occasions? The answer is simple - he cannot. Even if Mr. Kinder could state with certainty that a defect existed on each of the four maintenance occasions, Mr. Kinder's proffered opinion is dependent upon his flawed and speculative opinion that the Subject Snowmobile's TRS fails 70% of the time.

Not only is Mr. Kinder's made-for-this-litigation methodology speculative and completely void of scientific principles, but Mr. Kinder's testimony is irrelevant to Plaintiffs' claims. Indeed, Plaintiffs claim that Polaris missed potential opportunities to discover a failure of the snowmobile to shut down when a throttle-

25

stuck error occurred. Yet, Mr. Kinder explicitly acknowledged that Polaris's alleged failure to service the Subject Snowmobile did not cause either the stuck-throttle event or failure of the engine shutdown sequence:

> Q. Would you agree with me that this alleged failure to maintain the vehicle didn't cause a stuck throttle?
>
> A. I agree.
>
> Q. It's not like a situation where you failed to maintain your brakes, and your brake fluid gets too much water in it, and the brake fluid boils, and it causes a brake failure?
>
> A. I would agree.
>
>        *     *     *     *     *     *
>
> Q. But the lack of maintenance is not what caused the engine not to shut down in response to a stuck throttle?
>
> A. That's true.

(Ex. 3, Kinder Dep. 131:1-8; 131:23-132:1.)

In sum, Mr. Kinder's methodology behind his lack of maintenance opinion is unscientific and not based on any actual analysis or research. *Daubert* demands more. The basic foundation for admissibility of expert testimony is that it "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Mr. Kinder does not and cannot demonstrate that such "good grounds" exist here.

26

### C.   Mr. Kinder's Opinions are Not Relevant and Will Not Assist the Trier of Fact.

The final prong of the Court's analysis of proposed expert testimony is commonly referred to as the "fit" requirement. In *Daubert*, the Supreme Court explained that expert testimony from a qualified expert, even if based on a sound methodology, is not admissible if it is not "relevant to the task at hand." *Daubert*, 590 U.S. at 597. With this in mind, the Court's role is especially significant because an expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *See Daubert*, 509 U.S. at 595. Indeed, because expert testimony can be very powerful, it is essential to ensure that only scientifically reliable methods are used to produce the opinions offered to a jury.

Mr. Kinder's anticipated expert testimony regarding the Subject Snowmobile's alleged defects will not be helpful to the trier of fact. First, as discussed in Section B(1), Mr. Kinder's opinion concerning the occurrence of a stuck throttle event impedes the role of the jury because it relies exclusively on cherry-picked witness testimony, which the jurors can evaluate for themselves. *See In re Lipitor* at 892 F.3d at 634-35; *see also Greenwell*, 184 F.3d at 496. Second Mr. Kinder's opinions do nothing to assist a lay juror in understanding Plaintiffs' defect theories. In fact, Mr. Kinder cannot identify any specific defect concerning the Subject Snowmobile's throttle system or explain what exactly caused the throttle system to "fail." Mr. Kinder made this abundantly clear during his deposition:

27

Q. Do you have an opinion to a reasonable degree of engineering certainty that there is a defect in the throttle safety switch?

A. Not any more than the overall system itself, no.

           *      *      *      *      *      *

Q. And you didn't identify any defect in the throttle safety switch sensors?

A. Is [*sic*] don't know where the defect exists, so I can't answer that.

Q. And you didn't identify any defect in the throttle cable?

A. Other than the kink that's near the housing, I don't believe there's an issue with the cable that was addressed at my inspection. Seemed to work normally.

           *      *      *      *      *      *

Q. And you weren't able to identify any defect in the throttle plates, correct?

A. That's correct.

Q. And you weren't able to identify any defect in the throttle body, correct?

A. That's correct.

Q. You weren't able to identify any defect in the engine stop switch, correct?

A. That's correct.

(Ex. 3, Kinder Dep. 228:8-11; 228:18-229:1; 229:13-21.)

As such, Mr. Kinder's testimony cannot possibly assist the trier of fact. His speculative, unsupported opinions fail to identify a single defect or provide specialized knowledge concerning the cause of the alleged stuck throttle or TRS

28

failure. This is fatal to Mr. Kinder's ability to testify as an expert in this case, as his opinions will do nothing but mislead the jury. *See Daubert*, 509 U.S. at 595. Indeed, because expert testimony can be assigned talismanic significance in the eyes of jurors, it is essential to ensure that Mr. Kinder's unsupported opinions are excluded. *Id.*

## CONCLUSION

For all the reasons set forth above, Polaris asks the Court to bar Robert Kinder's testimony because it fails to meet the Rule 702 standard for expert opinions. His unqualified, unsupported, and unreliable testimony has no place in the upcoming trial.

DATED: May 18, 2022

Respectfully submitted,

s/ *Matthew E. Nirider*

Matthew E. Nirider (IL 6290343)
Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
mnirider@beneschlaw.com
dbeery@beneschlaw.com

*Attorneys for Defendant Polaris Industries Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.


*/s/ Matthew E. Nirider*
Matthew E. Nirider