## SIN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEBORAH HOLMES, *et al.*,

      Plaintiffs,

v.

POLARIS INDUSTRIES INC.,

      Defendant.

CASE NO. 2:20-cv-11390-GCS-RSW

Judge George C. Steeh

Magistrate Judge David R. Grand

---

Jeffrey T. Stewart (P24138)
David S. Shiener (P78608)
JOHNSON LAW, PLC
Attorneys for Plaintiffs
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324.8300 F: (313) 324-8301
jstewart@venjohnsonlaw.com
dshiener@venjohnsonlaw.com

Matthew E. Nirider (IL 6290343)
Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Attorneys for Defendant
71 S. Wacker Drive, Suite 1600
Chicago, IL  60606
P: (312) 212-4968 F: (312) 767-9192
mnirider@beneschlaw.com
dbeery@beneschlaw.com

---

## DEFENDANT POLARIS INDUSTRIES INC.'S OMNIBUS MOTION IN LIMINE AND SUPPORTING MEMORANDUM OF LAW

Defendant Polaris Industries Inc. ("Polaris") hereby files this Omnibus Motion in Limine 1 through 11 and requests that the Court enter an Order excluding from evidence and argument the following:

1. Mention of the size or location of the law firms representing the parties in this action;

1

2. Mention of the parties' financial status;

3. Argument relating to the Golden Rule;

4. Exclusion of non-party witnesses from the Courtroom during trial;

5. Barring lay witnesses from offering expert testimony;

6. Barring Plaintiffs' Counsel from offering personal opinions;

7. Barring evidence related to the existence of Defendant's insurance coverage or lack thereof;

8. To preclude any references by Plaintiffs' counsel that Polaris was intentional, reckless, willful or wanton, or in conscious disregard of Ms. Holmes's rights or safety

9. To permit the viewing of the Subject Snowmobile; and

10. To preclude any reference to the settlement offers or settlement negotiations in this matter.

11. To preclude use of videos of Polaris snowmobiles and other vehicles without proper foundation and authentication.

The grounds and legal authority for Polaris's motion are set forth in the Memorandum of Support below. Pursuant to Local Rule 7.1(a), Polaris states that it has formally met and conferred with Plaintiffs' counsel, explained the nature of this motion and the legal basis for it, and counsel did not concur in the relief sought.

DATED: May 24, 2022

2

Respectfully submitted,

s/ *Matthew E. Nirider*

Matthew E. Nirider (IL 6290343)
Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
mnirider@beneschlaw.com
dbeery@beneschlaw.com


*Attorneys for Defendant Polaris Industries Inc.*

# TABLE OF CONTENTS

Page

I. STATEMENT OF ISSUES PRESENTED ........................................................1

II. STATEMENT OF CONTROLLING OR MOST
     APPROPRIATE AUTHORITIES ...............................................................1

III. BRIEF STATEMENT OF FACTS................................................................1

IV. INADMISSIBLE EVIDENCE .....................................................................2

    1.    The Court should bar any evidence or testimony related
            to the size or location of the law firms representing the
            parties. ..................................................................................2

    2.    The Court should bar mention of the parties' financial
            status. ...................................................................................5

    3.    The Court should bar argument relating to the Golden
            Rule...................................................................................6

    4.    The Court should exclude non-party lay witnesses from
            the Courtroom during trial..................................................7

    5.    The Court should bar lay witnesses from offering expert
            testimony. ...........................................................................8

    6.    The Court should bar Plaintiffs' Counsel from offering
            personal opinions..............................................................12

    7.    The Court should bar evidence related to the existence of
            Defendant's insurance coverage or lack thereof. ...............13

    8.    The Court should allow the Subject Snowmobile to be
            brought into the courtroom for trial. ..................................14

    9.    The Court should preclude any reference to the
            settlement offers or settlement negotiations in this matter. ...............16

    10.    The Court should exclude any references by Plaintiffs
             that Polaris was intentional, reckless, willful or wanton,
             or in conscious disregard of Ms. Holmes's rights or
             safety................................................................................16

i

11.   This Court should preclude Plaintiffs from introducing
      videos of Polaris snowmobiles and other vehicles without
      proper foundation and authentication..................................................18

**V. CONCLUSION**...................................................................................**23**

## DEFENDANT POLARIS INDUSTRIES INC.'S MEMORANDUM IN SUPPORT OF OMNIBUS MOTION IN LIMINE

### I.  STATEMENT OF ISSUES PRESENTED

Should the Court exclude from entry into evidence and mention at trial improper, irrelevant, and prejudicial materials and argument?

Polaris Answer: **YES.**

### II.  STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. Fed. R. Evid. 401

2. Fed. R. Evid. 402

3. Fed. R. Evid. 403

4. Fed. R. Evid. 408

5. Fed. R. Evid. 615

6. Fed. R. Evid. 602

7. Fed. R. Evid. 701

8. Fed. R. Evid. 702

### III.  BRIEF STATEMENT OF FACTS

This case arises from a single-vehicle snowmobile accident that occurred in Munising, Michigan on February 9, 2019. Plaintiff Deborah Holmes sustained injuries when she unintentionally applied too much throttle, lost control of her snowmobile (a Polaris Switchback 600 Pro S) (the "Subject Snowmobile"), and collided with a group of trees. Polaris owned the Subject Snowmobile. Plaintiff's

1

family friend "checked out" the Subject Snowmobile through Polaris's employee checkout program. Plaintiffs assert claims for breach of implied warranty and negligence against Polaris, which designed and manufactured the Subject Snowmobile.

## IV.  INADMISSIBLE EVIDENCE

### 1.  The Court should bar any evidence or testimony related to the size or location of the law firms representing the parties.

Polaris asks the Court to make clear that no attempt to reference the size or location of the law firms representing Plaintiffs or Polaris will be allowed at trial. This may include reference to the cities in which the firms are located, the number of attorneys at the firms, and their billing rates, experience, or amount of fees incurred -- for example, references to Polaris being represented by "Chicago lawyers," or references to the size of defense counsel's firm. Such evidence is inadmissible under Fed. R. Evid. 401, 402, and 403.

The decision to admit or exclude relevant evidence, after balancing the prejudicial effect against the probative value, is within the sound discretion of the trial judge. *United States v. Certain Land Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982). Under the Federal Rules of Evidence, all relevant evidence is admissible "unless otherwise excluded by law or the rules of evidence." Fed. R. Evid. 402. Moreover, otherwise relevant evidence may be excluded if, among other things, its "probative value is substantially outweighed by the danger

2

of. . . unfair prejudice, confusing the issues" or of "misleading the jury." Fed. R. Evid. 403. Evidence is unfairly prejudicial, and should be excluded, if it has a tendency to suggest a decision on an improper basis, such as an emotional basis. *United States v. West*, No. 06-20185, 2011 WL 1233224, at *2 (E.D. Mich. Mar. 31, 2011). The law firm of Benesch, Friendlander, Coplan & Aronoff LLP ("Benesch"), which has hundreds of attorneys, represents Polaris. Additionally, the home offices of Polaris's lead counsel are located in Chicago, Illinois. On the other hand, Plaintiff is represented by attorneys from Johnson Law, PLC located in Detroit, Michigan.

> ### a.  Evidence or testimony related to the size or location of the law firms representing the parties is irrelevant.

Without casting aspersions on Plaintiffs' counsel, Polaris wishes to foreclose any possibility of comments about Polaris being represented by a large, out-of-state law firm. But evidence or statements regarding the individual lawyers and law firms, where they are located, their size, and any other similar references are not germane to the issues in this case and will only distract the jury. Such evidence is thus inadmissible under Fed. R. Evid. 401. *See also Rheinfrank v. Abbott Labs., Inc.*, 2015 WL 5258858, at *7 (S.D. Ohio Sept. 10, 2015) (granting motion in limine "to exclude evidence of the size and resources of the law firms representing [defendant] and/or costs of defense" because "such evidence is irrelevant.")

3

**b.** **The evidence or testimony related to the size or location of the law firms representing the parties is unfairly prejudicial.**

Permitting this type of evidence regarding the individual lawyers and their law firms at trial could garner animosity from jurors toward the law firm that represents Polaris. The only purpose of such statements would be to create a "home court" bias toward the local firm that represents Plaintiffs. It would be unfairly prejudicial to Polaris in violation of Fed. R. Evid. 403 because it will waste time and confuse, mislead, and inflame the jury. While it may be appropriate for the Court to inquire on *voir dire* whether any juror is personally acquainted with the trial attorneys, Plaintiffs should not be permitted to reference the size or location of Benesch, Johnson Law, and their offices under the guise of inquiring into this information. This unfairly prejudicial evidence serves only to influence the jury to decide the case or assess damages on an improper basis. *See e.g., Caterpillar Inc. v. R & R Steel Const. Co. Inc*, No. 2:10-CV-21, 2012 WL 1247147, at *2 (W.D. Mich. Apr. 13, 2012) (in an indemnity action, recognizing "the potential danger that evidence regarding the [plaintiff indemnitee's] settlement amount and fees incurred in the [underlying personal injury] suit could distract the jury from consideration of the breach of contract issue before it," and thus granting the plaintiff's motion to exclude such evidence). Likewise, here, this Court should preclude Plaintiffs from introducing evidence related to or making statements about the law firms that represent the parties in this case.

4

15715080 v2

**2.      The Court should bar mention of the parties' financial status.**

Polaris anticipates that Plaintiffs will seek to admit evidence of, or make reference to, the financial condition of Polaris or Plaintiffs. Any reference to the wealth, income, financial strength, profitability, the ability of Polaris to pay a verdict, or any reference to any alleged financial disparity between the parties is irrelevant and should be excluded on that basis alone in accordance with Fed. R. Evid. 401 and 402. Here, the jury's task is to determine whether the Subject Snowmobile was defective, and whether such alleged defects caused Plaintiffs' claimed damages. Therefore, evidence of a party's financial status is irrelevant and should be excluded. *Id.*

In addition, evidence of Polaris's financial status will only illicit ill-will towards Polaris by inciting the jurors' potential aversion to large corporations and suggesting that Polaris is in a financial position to pay Plaintiffs' requested damages and must therefore be excluded pursuant to Fed. R. Evid. 403.  Reference to a party's wealth "could heighten the likelihood of juror caprice." *See Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 647 (6th Cir. 2005). All such comments inflame the jury and influence a verdict based upon bias and emotion and such comments are routinely excluded. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 757 (6th Cir. 1980) (ordering a new trial when plaintiff's counsel continually referenced the ability of defendant's to pay hefty award and citing to the well-recognized

principle that "justice is not dependent upon the wealth or poverty of the parties and a jury should not be urged to predicate its verdict on a prejudice against bigness or wealth.").

### 3. The Court should bar argument relating to the Golden Rule.

Polaris anticipates that Plaintiffs will seek to invite the jury to place itself in Plaintiffs' position, "send a message" to Polaris with its verdict, act as the conscience of the community, fulfill its civic duties, or invoke other similar tactics which ask the jury to ignore the lack of evidence supporting Plaintiffs' product liability claims. Such tactics must be barred.

"Golden Rule" arguments are universally recognized as improper. *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020). Specifically, asking jurors to place themselves in the victim's shoes or to "send a message" violates the ban on Golden Rule arguments. *Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *6 (E.D. Mich. 2021) (granting defendants' motion in limine with respect to the "Golden Rule" and "Send a Message" arguments). "'Golden Rule' arguments tend to encourage the jury to make decisions based on personal interest and bias rather than on the evidence." *Id.* In addition, requesting that the jury "send a message" to Polaris in lieu of evaluating all the evidence is likewise prohibited. *United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991) (finding a "send a message" argument to be "a single misstep so destructive to defendant's right to a fair trial that it

constitutes reversible error"); *see also Calaway ex rel. Calaway v. Schucker,* No. 2:02-CV-02715-STA, 2013 WL 311441, at *3 (W.D. Tenn. Jan. 25, 2013) (citing to *Johnson v. Howard*, 24 Fed. App'x 480, 487 (6th Cir. 2001) and granting defendant's motion in limine barring plaintiff from asking the jury to "send a message" through its verdict because such argument invites a decision "based upon bias and prejudice.").

Hand-in-hand with the universally recognized inappropriateness of "Golden Rule" arguments is the prohibition of relevant evidence if the danger of unfair prejudice substantially outweighs any probative value such evidence may carry pursuant to Fed. R. of Evid. 403. This evidence serves only to inflame and confuse the jury, while influencing a verdict based upon bias and emotion, rather than the facts and law, and therefore must be barred. *Id.*

### 4. The Court should exclude non-party lay witnesses from the Courtroom during trial.

Fed. R. Evid. 615 provides that at a party's request, "the court must order witnesses excluded so that they cannot hear other witnesses testimony." Fed. R. Evid. 615. The trial of this matter is anticipated to last seven days. During this time, several fact witnesses will provide testimony – many of whom are Ms. Holmes's friends and family. Excluding non-party lay witnesses pursuant to Fed. R. Evid. 615 is the only way to ensure that the provided testimony is to each lay witness's best recollection, and not influenced by or tailored to testimony provided by witnesses

7

who previously took the stand. This will promote a fair trial for both Plaintiffs and Polaris.

**5.     The Court should bar lay witnesses from offering expert testimony.**

Polaris requests that the Court bar any lay witness from opining, concluding, speculating, implying, or otherwise testifying as to the nature and extent of Plaintiff Deborah Holmes's alleged injuries, disabilities, physical conditions, diagnoses, prognoses, and/or otherwise concerning her physical capabilities. As provided by law, such lay witness opinions are improper and prohibited. *See, e.g, Ferris v. Pennsylvania Fed'n Bhd. of Maint. of Way Emps.*, 153 F. Supp. 2d 736, 745 (E.D. Pa. 2001) ("Given the complex physical and psychological injuries that [plaintiff] allegedly suffered" the Court held that "any proffered testimony on these subjects must meet the requirements of Rule 702 and the Daubert line of cases."); *see also Jefferson v. MilVets Sys. Tech., Inc*., 172 F.3d 919 (D.C. Cir. 1999) ("Whereas testimony from lay witnesses may be sufficient to establish that an individual is 'distressed' in some fashion, it may not be sufficient to establish that an individual suffers from a particular medical condition . . . which only professional medical care providers may be qualified to diagnose."). In addition, this Court must also bar any lay witness, particularly those lay witnesses who witnessed the incident, from offering expert testimony regarding the ultimate issues of product defect and causation in this case.

The scope of lay and expert witness testimony is defined by statute. If the witness is not testifying as an expert, Fed. R. Evid. 602 provides that a lay witness must have "personal knowledge of the matter."  Fed. R. Evid. 602. If a witness is not testifying as an expert, testimony in the form on an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

On the other hand, a qualified expert may testify to matters within their "knowledge, skill, experience, training, or education" if such testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "[L]ay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (internal quotation marks and citation omitted).

> **a.   The Court should bar lay witnesses from providing expert opinions regarding Ms. Holmes's physical injuries and future medical care.**

Polaris anticipates that Plaintiffs may attempt to blur the lines between lay and expert witness testimony by eliciting opinions from unqualified witnesses as to the prognosis of Ms. Holmes's injuries, her physical capabilities, and the need for future medical treatment, including the possibility of future surgeries. An individual's prognosis requires expert testimony because such knowledge is not in the common knowledge of the average person. *See, e.g., Edmonds v. Detroit Bd. of Education*, 114 Mich. App. 600, 603, 319 N.W.2d 601 (1982) (noting that there did not appear to be "any dispute as to the medical prognosis of plaintiff's arteriosclerotic cardiovascular disease," because "[m]edical experts for both parties concur[red] on that point").

Although these witnesses may testify as to their personal knowledge of Ms. Holmes's recovery, lay witnesses should be barred from providing any expert testimony concluding Ms. Holmes is medically required to have future surgeries as a result of the incident or other highly technical conclusions as they lack the requisite qualifications to make such conclusions and were not disclosed as experts pursuant to Fed. R. Civ. P. 26(a)(2).

> **b.    The Court should bar lay witnesses from providing expert opinions regarding ultimate issues of product defect and causation.**

In addition, Polaris anticipates Plaintiffs may attempt to have these lay witnesses, particularly those who witnessed the incident and who claim extensive

experience with snowmobiles – Ms. Holmes, her son David Holmes, and friend Debra Sparrow – provide expert testimony regarding the cause of the incident. Such opinions would be impermissible because none of the lay witnesses have been appropriately disclosed as experts pursuant to Fed. R. Civ. P. 26(a)(1). They were not deposed as experts, nor did they offer expert reports. Although they witnessed the incident, and may properly testify about what they observed, they are not qualified to offer an expert opinion as to the ultimate issues of product defect and causation in this case.

The case of *Bogosian v. Mercedes-Benz of North America*, 104 F.3d 472 (1st Cir. 1996) is instructive on this issue. In *Bogosian*, a case in which the plaintiff alleged an automobile transmission was defective, the First Circuit found that even though the plaintiff's proffered expert Joseph Davidson had extensive experience in automobile mechanics, he was not qualified to opine on matters regarding an alleged design defect in the Subject Snowmobile automatic transmission. *Id.* at 476. Davidson earned a Bachelor of Science degree in industrial and vocational education, was certified to teach vocational automobile mechanics, completed three semesters of electrical engineering courses at Carnegie-Mellon University, worked as an automobile mechanic for 15 years, and was certified as a master automobile technician for diagnosis of automobiles. *Id.* at 476-477. Despite Davidson's qualifications, the court in *Bogosian* concluded that he was not qualified to testify

11

on the central issue in that case of design defect. *Id.* at 477. The court noted that Davidson lacked "any significant expertise –by way of knowledge, skill, experience, training, or education–in relevant areas such as the design or manufacture of automobiles or their components." *Id*.

The same applies here. Ms. Holmes, David Holmes, Debra Sparrow, and the other members of the snowmobiling group testified they have years of experience driving sleds, yet, that experience is far less than the qualifications presented in *Bogosian.* Even if some of the lay witnesses had been appropriately designated as experts pursuant to Fed. R. Civ. P. 26 (which they were not), they would clearly not be qualified to offer expert opinions on product defect or the ultimate issue of causation. Therefore, Plaintiffs' lay witnesses must be barred from providing any testimony related to questions of product defect and causation.

### 6. The Court should bar Plaintiffs' Counsel from offering personal opinions.

At trial, Plaintiffs' counsel may attempt to improperly interject their own personal opinions and beliefs about the case or other matters. First, personal opinions of counsel are not true evidence of anything, they have no tendency to make a fact more or less probable and should be classified as irrelevant. Fed. R. Evid. 401 and 402. On that basis alone, such opinions and beliefs must be barred. Moreover, counsel's personal beliefs will only confuse, inflame, and mislead the jury, thereby suggesting that they decide the case on an improper basis and should therefore be

inadmissible under Fed. R. Evid. 403. The Sixth Circuit has uniformly held that personal opinions of counsel have no place at trial. *United States v. Collins*, 78 F.3d 1021 (6th Cir. 1996). "It is well established that the personal opinion of counsel has no place at trial . . . It is unprofessional for counsel to express a personal belief or opinion in the truth or falsity of any testimony." *Id.* at 1039-40. (citation omitted) This Court should thus preclude Plaintiffs' counsel from interjecting personal opinions at trial because they are not only irrelevant and unfairly prejudicial to Polaris, but unethical. *Id.*

**7.    The Court should bar evidence related to the existence of Defendant's insurance coverage or lack thereof.**

Polaris requests this Court to preclude Plaintiffs from raising in any way the issue of whether Polaris is covered by insurance or similar contract or policy for the allegations at issue in this lawsuit. Such evidence is irrelevant pursuant to Fed. R. Evid. 401 – there is no relationship between Plaintiffs' allegations and whether Polaris has insurance. Moreover, such evidence is barred by Fed. R. Evid. 411, which provides: "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." "The general principle that the voluntary or intentional introduction into evidence, either directly or indirectly, by the plaintiff of the fact that a defendant in a tort action is protected by liability insurance, is prejudicial error and grounds for

13

a mistrial, is ... well settled." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758 (6th Cir. 1980).

The court should also exclude references to insurance because the danger of unfair prejudice substantially outweighs any probative value. Fed. R. Evid. 403. The evidence will only confuse, inflame, and mislead the jury–suggesting that Polaris has a surplus of available insurance to cover a judgment. *Id.* This could cause the jury to decide the case or assess damages on an improper basis in direct conflict with Fed. R. Evid. 403. Any mention of liability insurance must be barred as unfairly prejudicial. *Id.*

### 8.   The Court should allow the Subject Snowmobile to be brought into the courtroom for trial.

Polaris requests this Court permit Polaris to bring the Subject Snowmobile into the courtroom during trial. Allowing the jurors at trial to review the Subject Snowmobile–the basis for which all Plaintiffs' claims are made–will aid the jury tremendously in understanding the trial testimony which will be given by both fact and expert witnesses. Certain design elements of the vehicles are difficult to explain verbally but become apparent when viewing the actual vehicle. For these reasons, Polaris asks that the jurors in this trial be permitted to view the Subject Snowmobile in the courtroom. The Subject Snowmobile will be drained of all fluids and fuel prior to trial.

A trial court has broad discretion to permit the use of a jury view of demonstrative exhibits during trial. *See United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1992); *see also Harris v. Ford Motor Company*, No. 3:04-0144, 2006 WL 5164774, at *1 (M.D. Tenn.) (exercising discretion and granting motion for jury view of vehicle at the courthouse); *Ryans v. Koch Foods, LLC*, No. 1:13-cv-234-SKL, 2015 WL 11108900, at *2 (E.D. Tenn.) (allowing the use of scale model vehicles as demonstrative exhibits finding that "if they are sufficiently accurate, [the demonstrative exhibits] may assist the jurors" in understanding the issues and avoid the potential for confusion). The evidentiary determination is guided by a Court's assessment of the relevance of the proffered demonstrative exhibit, as well as the extent to which any prejudice is created by the proffered evidence. *See* Fed. R. Evid. 402.

Photographic evidence alone would be insufficient to depict the components of the Subject Snowmobile at issue in this case, the size and dimensions of the Subject Snowmobile, and the relationship of the components to one another. The use of the Subject Snowmobile for a jury view would allow the jury to better weigh the testimony offered by the parties' various experts and aid in explaining to the jury difficult design aspects. Allowing the jury to view the Subject Snowmobile at issue in all of the claims in this case will be highly beneficial to the jury and the Court should exercise its discretion to grant this request.

15

**9.    The Court should preclude any reference to the settlement offers or settlement negotiations in this matter.**

Pursuant to Fed. R. Evid. 408, evidence related to the parties' settlement negotiations are inadmissible and Plaintiffs should be precluded from making any reference to settlement offers and statements made during negotiations between Plaintiffs and Polaris.

**10.   The Court should exclude any references by Plaintiffs that Polaris was intentional, reckless, willful or wanton, or in conscious disregard of Ms. Holmes's rights or safety.**

Pursuant to Fed. R. Evid. 401, evidence that Polaris acted recklessly, maliciously, willfully and/or wantonly, or with conscious disregard to Plaintiffs' rights or safety is irrelevant to their claims for negligence and breach of warranty because it does not have any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Put simply, absent intentional misrepresentation and punitive damages claims, the use of this inflammatory language is irrelevant. *Id.;* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

To establish their claim of negligence, Plaintiffs must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000). To establish their breach of implied warranty claim, at minimum, Plaintiffs must prove: (1) that the product was defective; (2) that the

16

product was defective when it left the control of the defendant; and (3) that the defective product caused the plaintiff's injuries. *Teal v. Argon Med. Devices, Inc.*, 533 F. Supp. 3d 535, 543 (E.D. Mich. 2021). As a result, Plaintiffs do not need to argue that Polaris acted recklessly, maliciously, willfully and/or wantonly, or with conscious disregard for Plaintiffs' rights or safety. Plaintiffs do not reference this type of reckless or malicious conduct in their Complaint, likely because neither negligence nor breach of implied warranty requires a showing of recklessness, maliciousness, or similar conduct.

Moreover, such argument and/or evidence would be unduly prejudicial and would violate Fed. R. Evid. 403 because if permitted, it will confuse, mislead, and distract the jury, and suggest a verdict based upon emotion by inflaming the jurors' passions. *United States v. West*, No. 06-20185, 2011 WL 1233224, at *2 (E.D. Mich. Mar. 31, 2011). Using inflammatory terms such as "reckless" and "malicious" to describe Polaris—when such terms are not the standards by which the jurors should be judging its conduct—will only offend, anger, and inflame the jury, distracting them from the facts and law at issue in this case, thus motivating the jury to punish Polaris with a large verdict. *Id.* (citing to *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) ("[Evidence] is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes an instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the

17

case.'")). Therefore, such inflammatory language, which has no legal underpinnings to Plaintiffs' claims in this matter, must be barred pursuant to Fed. R. Evid. 401, 402, and 403.

**11.    This Court should preclude Plaintiffs from introducing videos of Polaris snowmobiles and other vehicles without proper foundation and authentication.**

Countless amateur videos of Polaris snowmobiles or other vehicles with which Polaris is not in any way associated appear online. Many of these videos were independently created, filmed, uploaded, or shared by Polaris's consumers (or others) on various websites, including but not limited to YouTube, Facebook, Instagram, Vine, and other social media or recreational/off-highway vehicle forums. It is typically unclear how many times a video was shared, by whom, and whether the video as it appears online is an original or copy or has been altered in some way. Polaris did not create, produce, sponsor, endorse, upload, share, or otherwise take any action regarding these videos. Moreover, Polaris does not and cannot control the content that users upload and share, and that these websites feature.

These inherently unreliable videos involve people operating purported Polaris snowmobiles in myriad locations and over varying terrain, at different speeds, and in different manners, much of which may not be apparent from the video itself. Polaris does not and cannot determine the condition, history or components of the featured snowmobiles/vehicles, whether they are altered, or control how its

18

snowmobiles are used and depicted in such videos. Likewise, Polaris cannot confirm how the videos and/or photographs were filmed and produced, or by whom. Such videos are thus inadmissible under the Federal Rules of Evidence because they are irrelevant to the issues in this case, unduly prejudicial to Polaris, and incapable of being authenticated. For these reasons and those set forth below, the Court should exclude them.

> **a.    Photographic or video evidence of Polaris snowmobiles that Polaris did not create, produce, endorse, or sponsor is inadmissible because it is incapable of being authenticated.**

As a threshold matter, random videos of Polaris snowmobiles are inadmissible because they are incapable of being authenticated. Under Rule 901 of the Federal Rules of Evidence, the proponent must prove that the evidence is "what its proponent claims." Moreover, Rule 1002 of the Federal Rules of Evidence (also known as the "best evidence rule") provides that where the contents of the evidence are at issue and sought to be proved, the evidence must be excluded unless it is the *original*.

First, it is impossible to determine that videos of Polaris snowmobiles online are what Plaintiffs purport them to be. Thus, they cannot satisfy this "condition precedent" to their admission. Fed. R. Evid. 901. It is unclear who has possessed such videos, or whether they were tampered with, altered, or otherwise manipulated, and whether the operator was experienced or the camera was in good condition. Indeed, it is unlikely that Polaris or Plaintiffs would even be able to identify the

19

camera's operator to elicit the required testimony to justify their admission. For that reason alone, the authenticity of the videos is highly questionable, rendering them inadmissible.

Second, it is impossible to determine whether videos of Polaris snowmobiles online satisfy the "best evidence rule" as outlined by Fed. R. Evid. 1002. Should Plaintiffs try to admit online videos of Polaris snowmobiles to try and prove anything with respect to the subject snowmobile or incident here, Polaris will take issue with their contents. Thus, under the "best evidence rule," Plaintiffs must show that the videos are their original copies. But for the reasons set forth above, Plaintiffs will be unable to make that showing. Such videos are thus inadmissible under Rule 1002 as well.

> **b.    Videos or Photographs of Polaris snowmobiles that Polaris did not create, produce, endorse, or sponsor are inadmissible because they are irrelevant.**

Even if videos of other Polaris snowmobiles were capable of being authenticated, they are inadmissible because they are irrelevant. The decision to admit or exclude relevant evidence under Fed. R. Evid. 403, after balancing the probative value against the prejudicial effect, is within the discretion of the trial court. *Certain Land Situated in the City of Detroit*, 547 F. Supp. at 681. All relevant evidence is admissible. Fed. R. Evid. 401. Evidence is relevant where "(a) it has any

tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.*

Here, the jury's task is to determine whether the subject snowmobile was defective, and whether such alleged defects caused Plaintiffs' claimed damages. Unverified videos of Polaris snowmobiles are irrelevant because they have no logical tendency to make a fact of consequence in this determination more or less probable. Such evidence is thus inadmissible as irrelevant under Rules 401 and 403. It should be excluded for this reason.

> **c.    Evidence of Polaris snowmobiles that Polaris did not create, produce, endorse, or sponsor is inadmissible because it is unfairly prejudicial.**

Relevant evidence may be excluded if, among other things, "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial, and should be excluded, if it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. at Advisory Committee Notes; *see also West*, 2011 WL 1233224, at *2.

Even if videos of other Polaris snowmobiles were somehow relevant (which they are not), such evidence is inadmissible because any probative value it carries is

outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting judicial time in violation of Rule 403.

Online videos of Polaris snowmobiles are inherently unreliable. The jury cannot determine from such videos the specific history of the snowmobile depicted or whether it has been involved in previous incidents, includes aftermarket components, or has otherwise been altered from its original designed and manufactured state. And Polaris has no control over the manner in which such snowmobiles are operated. Finally, in this case, Plaintiffs are alleging that the subject snowmobile had a defect in the throttle system. It would be impossible to determine whether any snowmobile in videos obtained online or elsewhere contain alleged defects at all, let alone an alleged similar defect of the same component parts that were involved in a similar incident. Allowing Plaintiffs to present evidence of these videos will lead the jury to infer that the subject snowmobile here behaved and operated similarly to the snowmobiles depicted in the videos, even though the videos might involve totally different vehicles, terrains, drivers, loads, failures, etc. Myriad factors are at issue in a case like this one, and presenting videos with completely different elements will only confuse, mislead, and distract the jury from the issues in this case and influence them to decide the case on an improper basis. It will also increase the length of trial and waste this Court's time and resources. The evidence should be excluded.

Accordingly, photos or videos of Polaris snowmobiles or other vehicles found online are barred by the Federal Rules of Evidence and this court should exclude them.

## V. CONCLUSION

For the reasons stated above, Defendant Polaris Industries Inc. respectfully requests this Court enter an order excluding from evidence and argument the issues identified in this motion and grant Defendant Polaris Industries Inc.'s Omnibus Motions in Limine 1 through 11.

DATED: May 24, 2022

Respectfully submitted,

s/ *Matthew E. Nirider*

Matthew E. Nirider (IL 6290343)
Dawn M. Beery (IL 6256520)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
mnirider@beneschlaw.com
dbeery@beneschlaw.com

*Attorneys for Defendant Polaris Industries Inc.*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.

*/s/ Matthew E. Nirider*

Matthew E. Nirider
